**Raymond LURCH, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Third Party Plaintiff-Appellee,**

v.

**The REGENTS OF the UNIVERSITY OF NEW MEXICO and Ralph Kaplan, Third Party Defendants.**

No. 80–2226.

United States Court of Appeals, Tenth Circuit.

Oct. 12, 1983.

Bruce P. Moore, Moscow, Idaho (Paul S. Cronin, Duhigg & Cronin, Albuquerque, N.M. were also on the brief), for plaintiff-appellant.

L.D. Harris, Asst. U.S. Atty., Albuquerque, N.M. (R.E. Thompson, U.S. Atty., Albuquerque, N.M., was also on the brief) for defendant-third party plaintiff-appellee.

Before HOLLOWAY, BREITENSTEIN and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is a suit under the Federal Tort Claims Act claiming that negligence by a neurosurgeon in the employ of the Government at a Veterans' Administration Hospital, while attempting surgical relief for severe facial pain, produced total loss of plaintiff Lurch's hearing in his left ear with a return of the pain symptoms sought to be relieved.

The central issue is whether the physician who treated the plaintiff was an employee of the Government for purposes of the FTCA. The district court held that the physician was not a federal employee because he performed neurological services for the Veterans' Administration Hospital

pursuant to a contract between the Veterans' Administration and the University of New Mexico School of Medicine. I R. 212. The court dismissed the complaint against the Government and also dismissed as moot the Government's third party complaint against the Regents and Dr. Kaplan. Plaintiff appeals.

I

On September 17, 1975 the plaintiff, Raymond Lurch, visited the Veterans' Administration Hospital in Albuquerque, New Mexico, because he was suffering from severe pain on the left side of his face. Dr. Kaplan examined him there and diagnosed a secondary trigeminal neuralgia.[1] III R. 8. The plaintiff visited Dr. Kaplan on two subsequent occasions, and they discussed the possibility of surgery.

On May 19, 1976 plaintiff was admitted to the V.A. Hospital with "terrible facial pain." An informed consent form was signed that day, and the following day Dr. Kaplan performed surgery. The operation was designed to sever the branches of the fifth cranial nerve that provide facial sensation.[2] After surgery, the pain returned and plaintiff eventually lost all hearing in his left ear. Plaintiff alleged that this was caused by negligent injury to his eighth cranial nerve during the operation.

On March 4, 1977 plaintiff sued the Veterans' Administration under the Freedom of Information Act (FOIA) to obtain all medical and administrative records concerning his care and treatment. The Veterans' Administration subsequently settled this suit by relinquishing all administrative records to plaintiff. I R. 68.

In October 1977 plaintiff filed an administrative claim for damages. The claim was not acted on by the Government and hence was deemed denied.[3] In January 1979 the plaintiff brought suit against the United States under the FTCA. I R. 1. After filing an answer to plaintiff's first amended complaint, the United States joined the Regents of the University of New Mexico and Dr. Kaplan as third party defendants. The United States moved for summary judgment against the plaintiff, arguing that Dr. Kaplan was not a Government employee but the employee of an independent contractor, thereby insulating the United States from liability under the FTCA. See 28 U.S.C. § 1346(b) (United States liable for negligence of its employees); id. § 2671 (independent contractors are not employees). This motion was denied.

Thereafter the parties stipulated that the district court could decide without an evidentiary hearing whether Dr. Kaplan was an employee of the Government. The issue was submitted on the contract, depositions and affidavits. The court held that Dr. Kaplan was not a federal employee. Rather, he was the employee of the University of New Mexico, an independent contractor, and the United States could not be liable. The court also determined that the third party complaint of the Government was therefore moot and should be dismissed.

---

1. This pain was secondary to the trauma caused by an earlier accident with the fan belt of a car in which plaintiff lost his left eye. III R. 5–8. Trigeminal neuralgia is defined as excrutiating episodic pain in the area supplied by the trigeminal nerve, (i.e., the fifth cranial nerve). It is often precipitated by stimulation to well defined trigger points. *Dorland's Illustrated Medical Dictionary* 1038 (25th ed. 1974). At times talking, eating, or brushing the teeth can serve as a trigger. 1 *Textbook of Medicine* 612 (ed. P. Beeson & W. McDermott, 14th ed. 1975).

2. The procedure is called a posterior fozza rhizotomy. III R. 18.

3. Bringing an administrative claim is a prerequisite before suit can be brought in United States District Court under the FTCA. 28 U.S.C. § 2675. The administrative claim must be denied by the agency either in writing or by failure to make a final disposition within six months of filing before a claimant can sue. This requirement is jurisdictional and cannot be waived. *Three-M Enterprises v. United States*, 548 F.2d 293 (10th Cir.1977). There may have been a three-months extension of the period for administrative action on this claim. *See infra*, note 13.

The basis of the district court's decision was that the V.A. Hospital did not direct or control Dr. Kaplan's medical treatment of the plaintiff. Additionally, the court found that the contract between the V.A. and the University of New Mexico provided that persons rendering services to the V.A. under the contract "were not to be considered Veterans Administration employees for any purpose." I R. 212.[4] Under the contract the University assumed full responsibility for protection of employees in furnishing services, such as providing for insurance and Social Security Payments, and since late 1975 the University of New Mexico paid Dr. Kaplan for work he did at the V.A. Hospital. I R. 212.

In addition, the district court found that the medical services could be provided by one or more neurosurgeons at the discretion of the School of Medicine of the University. After November 20, 1975, Dr. Kaplan received his compensation or pay check from the University and he did not receive any payment from the Veterans' Administration Medical Center for services performed in May, June or July, 1976. I R. 212. The court further found that the Chief of the Surgical Service of the V.A. Medical Center did not influence the practice of the neurosurgeons from the University who were providing services to the V.A. Medical Center and the surgeons were free to perform any surgery at the Center considered within the realm of neurological surgery. The Chief of Surgery of the V.A. Medical Center did not direct or control Dr. Kaplan in performing the surgery on plaintiff and could not and did not direct Dr. Kaplan as to the surgical methods or instruments to be used in any surgery. I R. 213.

Of the findings, which we have outlined above, plaintiff challenges only two—findings 14 and 17—as not being supported by the record. Appellant's Brief in Chief at 6. Those were findings respectively as follows:

14. The services could be provided by one or more neurosurgeons at the discre-

tion of the School of Medicine, University of New Mexico.

\* \* \* \* \* \*

17. The Chief of the Surgical Service, Veterans Administration Medical Center, did not influence the practice of the neurosurgeons from the University of New Mexico who were providing services to the Veterans Administration Medical Center and said surgeons were free to perform any surgery at the Veterans Administration Medical Center that was considered within the realm of neurological surgery.

I R. 212–13.

Essentially the plaintiff argues that the district court erroneously concluded that Dr. Kaplan was not an employee of the United States. It is plaintiff's position that the control test as generally applied is not the appropriate test for determining if a physician is a federal employee. Should we reject this, plaintiff has two alternative arguments. He further contends: (1) that 38 U.S.C. § 4116(a) creates an exception for physicians to the statutory rule that the United States is not liable for the negligence of independent contractors; and (2) that the United States should be equitably estopped from asserting the independent contractor defense. We are not persuaded by plaintiff's arguments and accordingly affirm.

## II

### The independent contractor exception

■ Under the FTCA, the United States is liable for the "negligent or wrongful act or omission *of any employee of the Government* while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). (emphasis added). The United States is not liable for acts of independent contractors. *Id.* §§ 1346, 2671. *See United States v. Orleans,* 425 U.S. 807, 813–14, 96

---

4. This contract was entered into under the authority of 38 U.S.C. § 4117.

S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976). This same rule applies to the employees of independent contractors. *Hill v. Schweiker,* 532 F.Supp. 1014 (D.N.H.1982). Thus it is important to distinguish between federal employees and the employees of independent contractors. And it is well settled that the question whether one is an employee of the United States is to be determined by federal law. *See Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1972); *Brooks v. A.R. & S. Enterprises Inc.,* 622 F.2d 8, 10 (1st Cir. 1980); *Lefevere v. United States,* 362 F.2d 352, 353 (5th Cir.1966); *Pattno v. United States,* 311 F.2d 604, 605 (10th Cir.1962), *cert. denied,* 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963).

■ The Supreme Court has made clear that a critical element in distinguishing a Government agency from an independent contractor is the power of the Federal Government "to control the detailed physical performance of the contractor." *United States v. Orleans, supra,* 425 U.S. at 814, 96 S.Ct. at 1976; *Logue v. United States, supra,* 412 U.S. at 527–28, 93 S.Ct. at 2219–20. The key inquiry under this control test is whether the Government supervises the day-to-day operations of the individual. *United States v. Orleans, supra,* 425 U.S. at 815, 96 S.Ct. at 1976. The district court found that the V.A. Hospital did not and could not control the manner in which Dr. Kaplan rendered medical treatment to the plaintiff. I R. 213. The decision to operate and the selection of surgical procedures and instruments were made by Dr. Kaplan without the control or influence of the V.A. Hospital. Plaintiff does not challenge these findings.[5] Under these precedents it would

seem that the requisite control, as a premise for finding that Dr. Kaplan is a federal employee, is lacking.

Plaintiff attempts to distinguish these cases by arguing that the control test should be subject to special considerations when a physician's employment status is at issue. Plaintiff reasons that because a physician must be free to exercise his professional judgment when he renders medical services, the control test as it has been generally applied is inappropriate to determine a physician's employment status. Plaintiff argues instead that those areas of medical service that *are* susceptible to supervision and control should be considered in determining if a physician is a federal employee.

We grant the logic and appeal of plaintiff's argument. A physician's professional ethics require that he have "free and complete exercise of his medical judgment and skill. . . ." Principles of Medical Ethics § 6, *reprinted in* Opinions and Reports of the American Medical Association Judicial Council, 5 (1977). Because a physician must exercise his own professional judgment, no one controls the detailed physical performance of his duties. Given this, by strictly following the traditional control test it is doubtful whether a physician could ever be found to be a federal employee under the FTCA.[6] Yet such a result would not comport with Congressional intent.[7] Hence it seems logical that some modified control test or some different test should apply with respect to physicians.

■ Today, however, we need not reach this question because we conclude that on

---

5. Plaintiff accepts all the findings except findings 14 and 17. Appellant's Brief in Chief at 6. In findings 18 through 20, the district court found that it was Dr. Kaplan's decision to operate and he made the choice of surgical procedures and instruments. I R. 213.

6. By the application of traditional control test standards, physicians have been held not to be employees of the Government in *Wood v. Standard Products Co.,* 671 F.2d 825 (4th Cir.1982), and *Walker v. United States,* 549 F.Supp. 973 (W.D.Okl.1982).

7. Section 4116 unambiguously contemplates that the United States can be liable for the malpractice of physicians. 38 U.S.C. § 4116(a) (United States can be exclusive defendant in malpractice action). *See e.g., Wright v. Doe,* 347 F.Supp. 833 (M.D.Fla.1972). The United States has been held liable under the FTCA for physician malpractice. *See, e.g., Earnest v. United States,* Nos. 81–1691 & 81–1840 (10th Cir. Apr. 11, 1983) (per curiam).

the undisputed facts here, the contractual arrangement itself and its application placed Dr. Kaplan outside the parameters of an employer-employee relationship with the Government. *See Logue v. United States, supra,* 412 U.S. at 530, 93 S.Ct. at 2220. The V.A. Hospital did not have a traditional employer-employee relationship with Dr. Kaplan. The V.A. had a contract with the University of New Mexico School of Medicine under which the University had the discretion to choose which physician or physicians would fulfill the University's obligations. I R. 44. This is not consonant with a traditional employer-employee relationship. Furthermore the contract expressly stipulated that "[s]uch [medical] personnel shall not be considered VA employees for any purpose." I R. 45. Additionally the University assumed full responsibility for the protection of its personnel furnishing services under the contract, in accordance with the personnel policy of the University, such as providing workmen's compensation, insurance, health examinations and social security payments. *Id.* at 45.[8]

Thus, the areas of general supervision of Dr. Kaplan's activity, which plaintiff seems to say should be considered, were confided to the University of New Mexico School of Medicine under the contract arrangement between the V.A. and the University. Because of that contract, which was not a sham, and the working arrangement under it between the V.A. and the University, we conclude that we must hold the independent contractor exemption from FTCA liability applies. We do so without reaching the troublesome point whether control of the minutiae of medical decisions and procedures should not be considered because they are always reserved to the individual physician.[9]

The broad independent contractor exemption is itself controlling in this case. As the Supreme Court pointed out in *Logue v. United States, supra,* 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121, Congress did not leave the independent contractor exemption subject to the vagaries of state law departures from the exemption and the courts are not "free to abrogate the exemption that the Act provides." *Id.* 412 U.S. at 528, 93 S.Ct. at 2220. We are persuaded that here the contract between the V.A. and the University controls, as in *Logue. Id.* at 530, 93 S.Ct. at 2220. The supervision and general control of the physicians resided with the University under the contractual arrangement. The findings were not clearly erroneous and the ruling that Dr. Kaplan was not a Government employee must be upheld.

### III

### *Plaintiff's alternative arguments*
#### A. *The pre-trial order*

We first address a contention by the Government that because the pre-trial or-

---

**8.** The court found that services performed by Dr. Kaplan at the Veterans Administration Medical Center in May 1976 were performed with the understanding that the contract expiring March 1, 1976 would be extended until June 2, 1976. I R. 212.

**9.** As an alternative argument, plaintiff appears to say that even under the traditional control test, there was sufficient control of the details of Dr. Kaplan's work so that he was an employee of the Government. Plaintiff argues, *inter alia,* that Dr. Kaplan could not refuse to see a V.A. patient requiring neurological care; that Dr. Kaplan or another neurosurgeon was required to be present at all V.A. neurological clinics; that Dr. Kaplan could be terminated by the hospital; and that he had to conform to V.A. rules and regulations.

Even if we accept all these assertions as being correct, they are insufficient to demon-

strate that Dr. Kaplan was a federal employee because taken together they amount to no more than pervasive regulation of Dr. Kaplan by the V.A. hospital. General regulation of activities was held not to avoid the independent contractor exemption from FTCA liability in *United States v. Orleans,* 425 U.S. 807, 817–18, 96 S.Ct. 1971, 1977–78, 48 L.Ed.2d 390 (1975), and *Logue v. United States,* 412 U.S. 521, 529–30, 93 S.Ct. 2215, 2220–21, 37 L.Ed.2d 121 (1973). *See also United States v. Page,* 350 F.2d 28 (10th Cir.), *cert. denied,* 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1965); *Norton v. Murphy,* 661 F.2d 882 (10th Cir.1981); *Flynn v. United States,* 631 F.2d 678 (10th Cir.1980); *Craghead v. United States,* 423 F.2d 664 (10th Cir.1970); *Eutsler v. United States,* 376 F.2d 634 (10th Cir.1967).

der makes no specific reference to plaintiff's alternative arguments, they are not properly before this court. I R. 119–25. Plaintiff says that the pre-trial order implicitly preserves its arguments concerning 38 U.S.C. § 4116(a) and estoppel.

■ We recognize that the purpose of a pre-trial order is to narrow the issues and thereby streamline litigation, and prevent surprise. *Cleverock Energy Corp. v. Trepel,* 609 F.2d 1358, 1362 (10th Cir.1979), *cert. denied,* 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980). To fulfill this purpose, a pre-trial order that sufficiently defines the issues will generally control the lawsuit both at trial and on appeal. *Hodgson v. Humphries,* 454 F.2d 1279, 1281 (10th Cir. 1972). *See Century Refining Company v. Hall,* 316 F.2d 15 (10th Cir.1963). However pre-trial orders have been construed to include issues not specifically mentioned in the order. *E.g., Trujillo v. Uniroyal Corp.,* 608 F.2d 815 (10th Cir.1979) ("the rule of strict liability" included all three defects developed in the comments to the Restatement of Torts); *Interstate Plywood Sales Co. v. Interstate Container Corp.,* 331 F.2d 449 (9th Cir.1964) (whether the contract was "valid and enforceable" sufficient to present the issue of price uncertainty because the contract could not be valid and enforceable if the price term were missing). *Accord, Godfrey v. Duckett,* No. 82–1220 (10th Cir. Aug. 23, 1983).

■ We believe that the plaintiff's two alternative arguments are implicitly within the pre-trial order. Plaintiff first raised these issues in February 1980 in response to the Government's motion for summary judgment. I R. 112–15. The pre-trial order was entered ten days later. *Id.* at 119. The order specifically contemplated that one of the contested issues of law was whether summary judgment should be granted. The district court did not deny the Government's motion until September 1980. *Id.* at 136. Thus, at the time the pre-trial order was entered, the court had

before it plaintiff's two alternative arguments. To rule on the motion, the district court needed to consider plaintiff's two alternative arguments made in response. Given these circumstances, we hold that the pre-trial order did not bar the assertion of these alternative issues but implicitly preserved them.

### B. *38 U.S.C. § 4116(a)*

■ Plaintiff argues that 38 U.S.C. § 4116(a) creates an exception for physicians to the rule that the United States is not liable under the FTCA for the negligence of its independent contractors; he says that in the circumstances of this case the independent contractor exemption of 28 U.S.C. § 2671 to Government liability under the FTCA is inapplicable. Appellant's Brief in Chief at 16–19. Section 4116(a) provides:

(a) The remedy—

(1) against the United States provided by sections 1346(b) and 2672 of title 28,

\* \* \* \* \* \*

for damages for personal injury, including death, allegedly arising from malpractice or negligence of a physician, . . . or other supporting personnel in furnishing medical care or treatment while in the exercise of such person's duties in or for the Department of Medicine and Surgery shall hereafter be exclusive of any other civil action or proceeding by reason of the same subject matter against such physician, . . . or other supporting personnel (or such person's estate) whose act or omission gave rise to such claim.

The gist of plaintiff's argument is that even if Dr. Kaplan was an employee of the University and not the V.A., the Government is subject to liability; that the immunization of individuals from liability by § 4116(a) is not specifically restricted to employees of the federal government; that because analogous statutes have explicitly limited their protection to federal employees,[10] § 4116(a) immunizes independent con-

---

**10.** Plaintiff relies upon 42 U.S.C. § 233(a), which makes the United States the exclusive

defendant for injuries that employees of the Public Health Service cause while acting within

tractors and their employees; that this therefore is recognition that there *is* FTCA liability for physicians' actions even if they are performing their duties in an independent contractor status, citing also the 38 U.S.C. § 4101(a) provision for the V.A. to provide complete medical and hospital service.

We reject the argument for two reasons. First, we do not read the statute to increase or expand the available remedies against the United States. It provides that "[t]he *remedy* against the United States provided by sections 1346(b) and 2672 . . . for damages for personal injury, including death, alleged arising from malpractice or negligence of a physician . . . shall hereafter be exclusive" 38 U.S.C. § 4116(a) (emphasis added). This does not create a cause of action where none existed. This section contemplates that if a remedy exists against the United States, it is the exclusive remedy (*i.e.,* the physician is not personally liable). *See Johnson v. United States,* 547 F.2d 688, 693 n. 33 (D.C.Cir.1976); *Benitez v. Presbyterian Hospital,* 539 F.Supp. 470 (D.P.R.1982). A threshold requirement before the statute becomes operative is the existence of a remedy against the United States under 28 U.S.C. §§ 1346(b) and 2672. Since we hold that Dr. Kaplan was not a Government employee, there is no remedy provided against the United States and § 4116(a) does not come into play.

Second, although § 4116(a) does not explicitly limit its immunization to federal employees, the rest of § 4116's scheme is strong evidence that Congress intended that § 4116 apply only to federal employees. Section 4116(b) provides that the "Attorney General shall defend any civil action or proceeding brought in any court against any person referred to in subsection (a) of this Section. . ." 38 U.S.C. § 4116(b). Section 4116(c) provides that any such civil action shall be removed from state court upon certification "by the Attorney General that the defendant was acting within the scope of such person's *employment.*" *Id.* § 4116(c) (emphasis added). The case must be remanded to state court if before trial on the merits the district court finds "that *the employee* whose act or omission gave rise to suit was not acting within the *scope of such person's office or employment.*" *Id.* § 4116(c) (emphasis added). These statutory provisions evince a Congressional intent that the protection of § 4116(a) extends only to federal employees acting within the scope of their employment.

In sum, we cannot agree that § 4116(a) and the other statutes relied on alternatively furnish a basis for Government liability for Dr. Kaplan's acts.

## C. *Equitable estoppel*

Plaintiff reasons that the United States should be equitably estopped to assert that Dr. Kaplan was not a Government employee because he had no notice that Dr. Kaplan might be an independent contractor until after the time for filing a state court action had run. Plaintiff asserts that the Government admitted that Dr. Kaplan was a federal employee in its answer to plaintiff's Freedom of Information Act (FOIA) action [11] and that this, coupled with the V.A. Hospital's failure to have observable differences between physicians employed by the V.A. and employees of independent contractors is enough to estop the Government. It appears to be plaintiff's position that the Government should not have admitted Dr. Kaplan's employment status and that it then had an affirmative obligation to advise plaintiff earlier that Dr. Kaplan might not

---

the scope of their employment. The legislative history of 38 U.S.C. § 4116 demonstrates that it was patterned after 28 U.S.C. § 2679, which makes the United States the exclusive defendant for injuries in motor vehicle accidents caused by federal employees acting within the scope of their employment. Letter from Senator Ralph W. Yarborough to Senator Harry F. Byrd, (Chairman Committee on Finance) (October 8, 1965), *reprinted in* 1965–2 *U.S.Code*

*Cong. & Ad.News,* 3927–29. Both sections limit their protection to federal employees.

**11.** Plaintiff brought this FOIA action to obtain the Veterans Administration Hospital's complete medical and administrative records regarding his treatment. These records were allegedly denied plaintiff after a formal request for their surrender. I R. 68.

be a federal employee so that plaintiff could have preserved his state law claim against Dr. Kaplan.

The district court summarily found that "[t]here is no factual basis to equitably estop the United States of America from asserting that Dr. Kaplan was an employee of an independent contractor and not an employee of a federal agency." I R. 214. There are no further findings on this issue.

■ We are not persuaded by the estoppel argument. The facts are short of what must be proven for estoppel to apply. There is no showing of "affirmative misconduct" by the Government. *See INS v. Miranda,* —— U.S. ——, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982).[12] In dealing with a claim of estoppel against the Government this court has recently set out these requirements for such an estoppel. They are: (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Home Savings & Loan Ass'n v. Nimmo,* 695 F.2d 1251, 1254 (10th Cir.1982).

■ In the instant case we find no showing of "affirmative misconduct" by the Government and particularly no showing of the basic second element of estoppel. Plaintiff has not shown that the Government acted in such a way that he had a right to believe that Dr. Kaplan was an employee of the United States for FTCA purposes. In plaintiff's FOIA action, which is relied on, the status of Dr. Kaplan under the FTCA was not at issue. In the FOIA suit the Government merely admitted plaintiff's general allegation that "surgery was performed by certain physicians employed by and on the staff of the Veteran's Administration Hospital in Albuquerque, New Mexico." I R. 71, 81. We cannot agree that evidence of the admission and other circumstances amounted to a showing of conduct which the Government intended the plaintiff to rely on in his tort litigation.

Furthermore, this is not a case where the Government delayed unreasonably in raising the independent contractor defense. Plaintiff first filed his FTCA complaint on January 10, 1979. I R. 1. There is no proof that this was ever served. I Supp. R. 3. Plaintiff filed his first amended complaint on June 12, 1979, I R. 3, and the Government answered on August 28, 1979. *Id.* at 7. Plaintiff asserts that this was the first time he had notice that Dr. Kaplan might not be a federal employee and that at this time the state statute of limitations had already run. Appellant's Brief in Chief at 24–25. Even if true, this is through no fault of the Government. The Government did not delay unreasonably in answering. If the plaintiff had brought suit earlier,[13] he would have known of the Government's independent contractor defense in time to bring a state action.

Rejection of plaintiff's estoppel contentions is not inconsistent with *Home Savings & Loan Ass'n v. Nimmo, supra.* In *Home Savings* we held that the United States was estopped from denying the validity of a loan transaction. Although the Govern-

---

12. There are special considerations when a party tries to estop the Government. *See generally,* Note, *Equitable Estoppel of the Government,* 79 Colum.L.Rev. 551, 552–54, 565–68 (1979). The Supreme Court has indicated that a showing of "affirmative misconduct" is necessary to estop the Government. *See INS v. Miranda,* —— U.S. ——, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam); *INS v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) (per curiam).

13. Plaintiff filed his administrative claim on October 4, 1977. I R. 44. After six months if the claim is not settled a claimant has the option of deeming it a final disposition, 28 U.S.C. § 2675(a). Although there is some indication in the record that the Government may have been granted a three month extension, I R. 100, even if true plaintiff could have brought suit in about July 1978. New Mexico has a three year statute of limitations for claims arising out of malpractice. N.M.Stat.Ann. § 41–5–13 (1978). Because plaintiff's operation occurred in May 1976, at the earliest his state action was barred in May 1979.

ment had notice that a note and mortgage could have been forged, it paid a loan guaranty without disclosing to Home Savings the possibility of the forgery. Had it known of the risk, Home Savings contended that it could have protected itself by retaining and selling the property. The Government asserted the forgery and claimed the right to reimbursement from Home Savings only after the transaction had closed. We are not faced with such inequitable conduct here.

### IV

In sum, we must sustain the district court's ruling that the independent contractor defense is good and that plaintiff's alternative theories of liability are without merit.

AFFIRMED.