Renee UTTERBACK, etc., et al., Plaintiffs,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

Young K. Yoon, M.D., et al., Third-Party Defendants.

Civ. A. No. C 83–0866–L(A).

United States District Court, W.D. Kentucky, Louisville Division.

Aug. 3, 1987.

Frederick C. Dolt, Louisville, Ky., for plaintiffs.

Richard Dennis, Asst. U.S. Atty., Louisville, Ky., for U.S.

Ben J. Talbott, Jr., David L. Baker, University Counsel, University of Louisville, Louisville, Ky., for Yoon, Puri and University of Louisville.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Senior District Judge.

This action was submitted to the Court for determination on the issue of whether or not Defendants Dr. Young K. Yoon and Dr. Puri were acting on behalf of the University of Louisville Medical School ("University of Louisville"), and were independent contractors, or whether they were acting as employees and servants of the Veterans Administration ("VA") of the United States of America ("United States"). Many days of trial were consumed in presenting the evidence and excellent and exhaustive briefs have been presented to the Court.

On October 20, 1980, Plaintiff Kenneth Utterback, a patient at the VA Hospital, in Louisville, underwent a surgical operation. During the course of that operation, Defendants Yoon and Puri were the anesthesiologists, and it is alleged in the complaint that they administered anesthesia in such a grossly negligent way as to result in grave and serious injuries to the Plaintiff.

The complaint alleges that the Defendants Yoon and Puri were agents and employees of the United States, and that the United States is liable to the Plaintiff under the Federal Tort Claims Act (FTCA). The United States filed a cross-claim against Defendants Yoon and Puri and against the University of Louisville, alleging that the two defendants were employees, agents and servants of the University of Louisville and were independent contractors insofar as the United States was concerned.

The operation occurred on October 20, 1982. At that time, there were in effect two documents signed by both the VA and by the University of Louisville.

The first of these documents was what is known as a "Scarce Medical Services" contract. It was drafted by the VA and is found in their Procurement Regulations. In Paragraph 7, it provides as follows:

PERSONNEL POLICY. The contractor shall assume full responsibility for the protection of his personnel furnishing services under this contract, in accordance with the personnel policy of the contractor, such as providing rooms, compensation, insurance, health examinations and social security payments. Such personnel shall not be considered Veterans Administration employees for any purposes.

The contract provided that the services were to be provided by the University of Louisville School of Medicine and that the costs were to be paid by the VA. The University of Louisville was to furnish 2.5 anesthesiologists for a total sum of $240,000.00 to be paid by the VA to the University of Louisville. The VA did not contract for specific anesthesiologists on the University of Louisville staff. The University of Louisville paid the salaries of the anesthesiologists and had the exclusive right to promote, demote, or suspend them. The contract at page 8 specifies that it is entered into under the authority of 38 U.S.C. § 4117 and does not mention 38 U.S.C. § 4116. There is nothing in the contract stating that the individual physicians will not be held liable for any malpractice nor is there any statement in the contract that the anesthesiologists would be covered by the FTCA.

Prior to 1980, previous contracts between the University of Louisville and the VA had a paragraph 8 entitled "Contractor's Responsibilities" which placed an obligation upon the contractor to be responsible for the acts of its employees whom it furnished to the VA.

In addition, there was in existence a "Memorandum of Affiliation" which does not mention the "Scarce Medical Services Contract". The Scarce Medical Services Contract in turn does not mention the Memorandum of Affiliation. The Memorandum of Affiliation can be terminated on six months' notice. The Scarce Medical Services contract can be terminated on thirty days' notice. The Memorandum of Affiliation provides that the VA facility at Louisville shall affiliate with the University of Louisville Schools of Medicine and Dentistry for the purpose of education and training. The school accepted advisory responsibility for the education and training programs contained within the VA facility. The VA retained full responsibilities for the care of patients including all administrative and professional functions.

The Memorandum of Affiliation provided that the director of the VA health care facility would be fully responsible for its operation. Paragraph 4 provided that the chiefs of services would be responsible to their superiors and the VA for the conduct of their services. In addition, the Memorandum of Affiliation provided that the full and part time staff would be responsible to their superiors in the VA for the discharge of their responsibilities and would participate in education and training programs.

The Memorandum of Affiliation provided, among other things, that civil actions arising from alleged negligence or wrongful conduct of house staff while engaged in patient care or related activities at the VA center would be considered and acted on in accordance with the provisions of Title 38 U.S.C. § 4116.

One of the contentions made by the third party defendant is that the Memorandum of Affiliation should be considered in conjunction with the Scarce Services Contract and that under the clear language of the Memorandum, the VA should be responsible for defending any suits based on malpractice of the house staff at the VA. That contention would seem to be largely negated by the fact that the Scarce Services Contract specifically states that it is entered into under the provisions of Title

38 U.S.C. § 4117, which authorizes the United States to enter into contracts with third parties for the furnishing of scarce services. However, the fact that the Scarce Services Contract was entered into under 38 U.S.C. § 4117 does not automatically mean that Drs. Puri and Yoon could not be considered to be employees of the United States for the purposes of this action.

Third party defendant contends Drs. Yoon and Puri were subject to the dictates and orders of Dr. Harbrecht, the chief of surgery at VA. This is true in that the surgeons employed at the VA facility decide when anesthesia is to be employed and what sort of anesthesia. The supplies for the anesthesia are all furnished by the VA and the VA pays for them. Any billing of the patients at the VA is made by the VA and not by the University.

Insofar as the plaintiff is concerned, there is no evidence that he was told that the anesthesiology services were being provided by employees of the University. Paragraph 1(e) of the Scarce Services Contract provides that the services to be performed by the employes of the University of Louisville will be under the direction of the chief of surgical services at the VA. Insofar as the daily services performed by the anesthesiologists were concerned, the VA surgeons observed their services and the way in which they carried them out. It was not physically possible, of course, for the University of Louisville surgical department to monitor these services on a daily basis, although the University certainly had the right to determine and did determine that the anesthesiologists were no longer qualified to perform services at the VA. That decision was made some time after the operation on the plaintiff.

This Court originally granted summary judgment to the government on the strength of the case of *Lurch v. United States*, 719 F.2d 333 (10th Cir.1983). In that case, the University of New Mexico Medical School and the VA Hospital at Albuquerque entered into a scarce services contract. Dr. Kaplan originally examined the plaintiff in 1975 and in 1976 performed

surgery on him. After surgery, plaintiff eventually lost all hearing in his left ear and still suffered from the pain which he had incurred from the operation.

After plaintiff brought suit under the Tort Claims Act, the United States joined the University of New Mexico and Dr. Kaplan as third party defendants. After a motion for summary judgment by the United States was denied, the parties stipulated that the district court could decide without an evidentiary hearing whether Dr. Kaplan was an employee of the United States. The issue was submitted on the contract, depositions and affidavits, and the court held that Dr. Kaplan was an employee of the University of New Mexico, an independent contractor.

The basis for the district court's decision was that the VA did not direct or control Dr. Kaplan's medical treatment of the plaintiff. The court also found that the contract between the VA and the University of New Mexico provided that persons rendering services to the VA were not to be considered VA employees for any purpose. Also the court pointed out that the University assumed full responsibility for protection of employees in furnishing services such as providing for insurance for social security payments and that it paid Dr. Kaplan for the work he did at the VA hospital.

The court pointed out that the chief of surgical services of the VA medical center did not influence the practice of the neurosurgeons from the University and that they were free to perform any surgery in the center considered within the realm of neurological surgery. The chief of surgery did not direct or control Dr. Kaplan in performing the surgery and could not and did not direct him as to the methods or instruments to be used.

The Court in *Lurch* pointed out that the contract between the University and the VA placed Dr. Kaplan outside the parameter of an employer/employee relationship with the VA. *See* 719 F.2d at 338.

The University points out in its brief that in *Lurch, supra,* plaintiff had failed to file any claim against Dr. Kaplan and the University of New Mexico with the court and the time for filing had expired. Therefore, if the United States was successful in persuading the district court that it could not be liable for Dr. Kaplan's actions under the Tort Claims Act, then the claim of the government against the third party defendants would be rendered moot. Other contentions are made by the defendant that in *Lurch* the VA conceded that the chief of surgical services did not in any way influence the actions of Dr. Kaplan, a situation which is not duplicated in the case at bar.

Since *Lurch* was decided, and since this Court entered its previous opinion, United States District Judge Krenzler has entered his opinion in the case of *Gamble v. United States of America v. University Anesthesiologists, Inc.,* 648 F.Supp. 438 (N.D.Ohio, 1986). In that case, plaintiff alleged negligence on the part of the anesthesiologists, the surgeon and the VA staff during an operation on Ernest Gamble which resulted in his death. The United States, when sued under the Tort Claims Act, filed an answer and third party complaint naming University Anesthesiologists, Inc. as a third party defendant. The government moved the court to dismiss or in the alternative for summary judgment as against the third party defendant on the grounds that the anesthesiologist was an employee of an independent contractor.

In 1983 plaintiff was operated on at the VA Hospital in Cleveland. Dr. John Fraser, an anesthesiologist, and Roselle Greaci, an anesthesia assistant student, were assigned the anesthesia treatment of Mr. Gamble. Dr. Fraser induced the anesthesia and Dr. Lemon, a VA medical resident under Dr. Fraser's direct supervision, intubated the plaintiff. Subsequently during the operation, Dr. Fraser left the operating room and a nurse employed by the VA replaced him temporarily and found out that something was wrong, whereupon Dr. Fraser returned to the operating room but was unable to prevent the subsequent death of Mr. Gamble three days later.

Judge Krenzler pointed out that the VA had a contract with University Anesthesiologists, Inc. under which that entity pro-

vided anesthesiology services to the VA hospital. Dr. Fraser was a physician who had worked at the VA for some five years and had held himself out as the chief of the anesthesiology service with the VA's consent. The anesthesiology section is a subdivision of surgical services at the VA. Dr. Fraser maintained his office in the surgery department.

Judge Krenzler did not discuss in any detail the provisions of the contract between University Anesthesiologists and the VA. He did, however, state that the essential question was whether the United States could insulate itself by contractual arrangements from liability for acts of medical malpractice conducted by an anesthesiologist in a VA hospital. That statement made by Judge Krenzler would seem to indicate that the contract between the VA and the anesthesiologist had some provision in it insulating the government from liability similar to the provisions in the case at bar. Judge Krenzler stated that the VA held itself out as a full service hospital and that by so doing it induced reliance upon the relationship of those services with the medical center. He stated that the patient relies upon the appearance that hospital agents, not independent contractors, will provide medical care to those who enter the hospital.

As pointed out by Judge Krenzler, patients who require anesthesia do not normally choose their anesthesiologist nor are they told that they are being cared for by an independent contractor who is not under the supervision of the VA. The Court also relied upon the fact that Dr. Fraser did business as the chief of the anesthesiology section and maintained his office in the surgery department of the VA with the consent of the VA and held that the government was estopped to deny liability for his malpractice.

Interestingly enough, Judge Krenzler does not cite any federal authorities for his decision and does not discuss the holding in *Lurch, supra,* concerning the issue of estoppel. In that case, the appellate court stated that in dealing with the claim of estoppel against the government, the plain-tiff must prove four elements: 1) That the party to be estopped must know the facts; 2) He must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; 3) the plaintiff must be ignorant of the true facts; and 4) must rely on the government's conduct to his injury. *See Lurch,* at 341, (*citing Home Savings v. Nimmo,* 695 F.2d 1251, 1254 (10th Cir.1982)). In *Lurch, supra,* plaintiff contended that the government was equitably estopped to assert that Dr. Kaplan was not a government employee because he had no notice that Dr. Kaplan might be an independent contractor until after the time for filing his state court action had run. Plaintiff asserted that the government had previous to his Tort Claim Act admitted that Dr. Kaplan was a federal employee and that this coupled with the VA's failure to have observable differences between physicians employed by the Va and employees of independent contractors was enough to estop the government.

The *Lurch* court held that the government was estopped and stated that plaintiff would have discovered the government's independent contractor defense if he had filed suit at an earlier date. Plaintiff in the case at bar is not basing his theory of equitable estoppel upon the same facts as did the plaintiff in *Lurch.* In fact, the plaintiff's theory might just as easily be one based on apparent authority. Many cases, including *Williams v. St. Claire Medical Center,* 657 S.W.2d 590 (Ky.1983), and *Paintsville Hospital Company v. Rose,* 683 S.W.2d 255 (Ky.1985), have held that a full service hospital may not insulate itself from liability for negligent acts committed by independent physicians. As stated in cases cited in *Williams, supra,* such as *Mehlman v. Powell,* 281 Md. 269, 378 A.2d 1121, 1124 (1977) and *Stanhope v. Los Angeles College of Chiropractic,* 54 Cal. App.2d 141, 128 P.2d 705 (1942), when a hospital is engaged in the business of providing health care services and when a person makes a decision to go to the hospital which provides those services, he is obviously relying on the hospital to provide them. *See Mehlman, supra.*

In the case at bar, the plaintiff, a veteran, who apparently was without the means to employ his own surgeon or anesthesiologist, went to the Veterans Hospital expecting that institution to render him all necessary medical services. He had no choice in the selection of who the surgeons or anesthesiologists were to be. He would have had no reason to inquire as to whether the anesthesiologists were independent contractors and he was not told that they were. In light of those circumstances, we believe that the decision of Judge Krenzler is applicable in the case at bar, notwithstanding the dearth of federal authority on this matter. In the case of *Grewe v. Mt. Clemens General Hospital,* 404 Mich. 240, 273 N.W.2d 429, 433 (1978), the court stated that "the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." Using that rule in the case at bar, it is obvious that the plaintiff was looking to the hospital for treatment of his physical ailments and not to the physicians who treated him or the anesthesiologists who assisted in the surgery since he had no choice in the decision as to whom they would be.

We recognize that in accepting this theory, we may well be creating an exception to the rule that where the government enters into a contract with a third party to render services, then the government may not be liable for the negligence of that third party. We should add that were we to decide this case solely upon the basis of the independent contractor defense made by the VA, we probably would have to find for the government, although that result is not clearly mandated in light of the conflict between the written contract and the actual practices that went on in the VA Hospital. The decision in this regard is made harder to reach by virtue of the fact that anesthesiologists are by their very nature not physicians who exercise complete autonomy in the carrying out of their services. The nature of their services and their relationship to the attending surgeons is different to a considerable extent from the usual situation where a surgeon is performing a service in a VA facility. A surgeon possesses a great deal of autonomy, if not complete autonomy, whereas the anesthesiologist does not.

In conclusion, our holding is that as between the plaintiff and the United States, the United States cannot escape liability on the grounds that Drs. Yoon and Puri were independent contractors in light of the court's holding that the government is estopped to deny the apparent authority of the VA Hospital to perform all medical services on the plaintiff. However, the doctrine of equitable estoppel or apparent authority does not extend to the relationship between the VA and the University of Louisville. The University was aware at all times of the true situation as evidenced by its contract with the VA. It, therefore, follows that the United States has the right to pursue any third party claim for contribution that it has alleged against the University of Louisville.

An order in conformity with this opinion will be entered this day.

## ORDER

This matter having come before the Court on a question of agency, and the Court having entered its memorandum opinion and being advised,

IT IS ORDERED that the motion of the United States for a determination that plaintiff's action against it is barred is overruled.

IT IS FURTHER ORDERED that the United States may pursue its claim for contribution.

This is not a final order.