Amy E. CARRILLO, individually and as Personal Representative of the Estate of Tyler Priest, deceased, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 92–35029.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1993.

Decided Sept. 27, 1993.

Brett A. Purtzer, Law Offices of Monte E. Hester, Inc., Tacoma, WA, for plaintiff-appellant Amy Carrillo.

Mark B. Stern and Edward Himmelfarb, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, DC, for defendant-appellee U.S.

Before: BEEZER and HALL, Circuit Judges, and CONTI,* District Judge.

CONTI, Senior District Judge.

## I. INTRODUCTION

Plaintiff–Appellant Amy Carrillo appeals from the district court's entry of summary judgment against her in this Federal Tort Claims Act ("FTCA") action. Carrillo claims that the United States is liable for the alleged negligence of Dr. Carl Ozimek, a civilian pediatrician whose employer, Pediatric Providers, P.S., contracted to provide pediatric care at Madigan Army Medical Center. The district court held that Dr. Ozimek was an independent contractor and not an employee of the United States, and therefore the government was not responsible under the FTCA for Ozimek's alleged negligence. We agree with the district court and AFFIRM.

## II. FACTS

The district court found that the facts were essentially undisputed, and the parties do not dispute them here.

This case arises out of the alleged negligence of Dr. Carl Ozimek. Dr. Ozimek is a pediatrician employed by Pediatric Providers, P.S.

Pediatric Providers contracted with the government to operate a pediatrics clinic at Madigan Army Medical Center ("Madigan"). This contract stated in essence that Madigan would provide "facilities, ancillary support, and therapeutic services, and equipment and supplies." Pediatric Providers would provide a receptionist and a qualified nurse, and would maintain a list of eligible practitioners. The agreement further provided that Pediatric Providers would provide its own "full professional liability insurance ... to the same extent as is usual and customary in civilian practice in the community."[1]

Amy Carrillo was enlisted in the Army and stationed at Fort Lewis, near Tacoma, Washington. On November 7, 1989, Carrillo brought her four-month old son, Tyler Priest, to the pediatrics clinic at Madigan. She signed a consent form bearing the legend "CHAMPUS CLINIC—PEDIATRIC PROVIDERS, P.S." at the top. The consent form also stated that "Your child is being seen today by a civilian doctor paid by CHAMPUS at no expense to you."

Tyler was examined by Dr. Ozimek. Dr. Ozimek noted a "knot on the ribs" and "nasal congestion." Dr. Ozimek diagnosed an upper respiratory infection, prescribed Dimetapp, and sent Tyler home with Carrillo. Carrillo testified that she requested x-rays of Tyler's ribs, but Dr. Ozimek said x-rays were not necessary.

Two days later, on November 9, 1989, Tyler died from child abuse. An autopsy concluded that the cause of Tyler's death was a blow to the head. The autopsy also revealed evidence of previous child abuse—partially healed broken ribs, scarring of the abdomen, knee, and hand consistent with healed burns or abrasions, and retinal hemorrhages indicating "shaken baby syndrome." Following a police investigation, Tyler's father, Tyson Priest, was charged with the second degree murder of Tyler. Tyson Priest committed suicide before his trial.

---

* Honorable Samuel Conti, Senior District Judge, Northern District of California, sitting by designation.

1. 10 U.S.C. § 1096 authorizes the Department of Defense to enter into resource-sharing agreements such as the one with Pediatric Providers in order to deliver health care "in a more effective, efficient, or economical manner." In ex-change, the contracting health care provider can receive payment from the Civilian Health and Medical Plan of the Uniformed Services ("CHAMPUS"), a statutory health-benefits program authorized under 10 U.S.C. § 1079 and § 1086 for certain members of the military and their dependents.

Carrillo sued the United States under the FTCA. She alleged that Dr. Ozimek's failure to diagnose child abuse on November 7, 1989 was the proximate cause of Tyler's death. She further alleged that Dr. Ozimek, through his association with Madigan, was an employee of the United States, and thus the United States was responsible for Dr. Ozimek's alleged negligence under the FTCA.

The district court granted the government's motion for summary judgment, holding that Dr. Ozimek was an independent contractor, and therefore the United States could not be held liable under the FTCA for his negligence. The district court also rejected Carrillo's argument that the government should be equitably estopped from denying liability because it holds out Madigan as a full-service hospital. This appeal followed.

## III. DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Jones v. Union Pacific R.R. Co.*, 968 F.2d 937, 940 (9th Cir.1992).

### A. *Whether Dr. Ozimek is an Employee or an Independent Contractor*

■ The FTCA contains a limited waiver of the federal government's sovereign immunity. It allows a plaintiff to sue the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The statute defines "employee of the government" to include "officers and employees of any federal agency." 28 U.S.C. § 2671. The term federal agency, however, expressly excludes "any contractor with the United States." *Id.*

We have held that "[t]he critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor, and not whether the agency must comply with federal standards and regulations." *Ducey v. United States*, 713 F.2d 504, 516 (9th Cir.1983) (*citing United States*

*v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219–20, 37 L.Ed.2d 121 (1973)).

We have not addressed the situation presented in this case, where a medical facility operated by the federal government contracts for the services of a private physician. Every circuit that has addressed the issue, though, has applied essentially the same "control" test mentioned above. The circuit courts are unanimous in holding that a contract physician is not an employee of the government under the FTCA. *See Leone v. United States*, 910 F.2d 46 (2d Cir.1990), *cert. denied*, 499 U.S. 905, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991) (private physician designated by Federal Aviation Administration as medical examiner); *Lilly v. Fieldstone*, 876 F.2d 857 (10th Cir.1989) (civilian physician contracted as consultant to perform emergency surgery at Army hospital); *Lurch v. United States*, 719 F.2d 333 (10th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 .(1984) (surgeon contracted to perform surgery at Veteran's Administration hospital); *Bernie v. United States*, 712 F.2d 1271 (8th Cir.1983) (contract physician of federal Indian Health Services); *Wood v. Standard Prods. Co., Inc.*, 671 F.2d 825 (4th Cir.1982) (contract physician of the United States Public Health Service).

The reasoning behind these cases is well represented by the Tenth Circuit's decision in *Lilly v. Fieldstone*, 876 F.2d 857 (10th Cir.1989). In that case, the plaintiff sued a private physician who performed emergency surgery on the plaintiff at an Army hospital. The Tenth Circuit refused to allow the government to be substituted as the proper party, holding that the physician was not an employee of the government under the FTCA. The court noted that the physician "was subject to the same rules, regulations and hospital control" as were Army physicians. 876 F.2d at 860. But the court reasoned that "[t]he Army controlled little about the end result or the manner and the method of reaching a result. Clearly, the end result (i.e. the outcome of surgery) was beyond the Army's control." *Id.*

Similarly, in *Wood v. Standard Prods. Co., Inc.*, 671 F.2d 825 (4th Cir.1982), the Fourth Circuit held that the United States was not responsible under the FTCA for the negligence of a private physician who contracted with the Public Health Service to furnish outpatient medical care. The court stated that in this context "the real test is control over the primary activity contracted for and not for the peripheral, administrative acts relating to such activity." 671 F.2d at 832.

In the case at bar, Dr. Ozimek's administrative duties, and to some extent the hours he would see patients, were regulated by Madigan. But neither Madigan nor any other agency of the federal government had any control over Dr. Ozimek's practice of medicine. Because Madigan did not control Dr. Ozimek's actions in diagnosing and treating patients, Dr. Ozimek was not an employee of the government when he treated Tyler Priest.

Carrillo, though, draws this court's attention to *dicta* in the Tenth Circuit's decision in *Lurch v. United States*, 719 F.2d 333 (10th Cir.1983). In *Lurch*, the court held that a private physician who contracted to perform surgery at a Veteran's Administration ("VA") hospital was not an employee of the United States under the FTCA. However, the court questioned the logic of the traditional "control" test as applied to physicians:

> Because a physician must exercise his own professional judgment, no one controls the detailed physical performance of his duties. Given this, by strictly following the traditional control test it is doubtful whether a physician could ever be found to be a federal employee under the FTCA. Yet such a result would not comport with Congressional intent. Hence, it seems logical that some modified control test or some different test should apply with respect to physicians.

*Id.* at 337 (footnotes omitted).

Carrillo places too much importance on this *dictum*. The court in *Lurch* implies that

if one gives too literal a reading to the "control" test, it can be asserted that even those physicians directly on the federal government's payroll, such as an Army physician, are not "employees" under the FTCA. This is obviously not what Congress intended.[2] In *Lurch*, though, the court stated that it "need not reach this question," because on the facts before it "the contractual relationship itself and its application placed [the physician] outside the parameters of an employer-employee relationship with the government." 719 F.2d at 337–38.

As in *Lurch*, the physician in this case was a private practitioner whose employer contracted to provide care in a government-operated hospital. *Lurch*, then, actually supports the government's position in the case at bar.

Carrillo also relies on *Quilico v. Kaplan*, 749 F.2d 480 (7th Cir.1984). That case again concerned the alleged negligence of contract physicians in a VA hospital. At the time of the alleged negligence, though, the physicians in *Quilico* had been appointed as temporary employees of the hospital pursuant to a federal statute. *See id.* at 481; 38 U.S.C. § 7405 (formerly § 4114(a)). Under the statute, appointed staff members like those in *Quilico* are considered government "personnel" and in most cases they are paid by the government. *See* 38 U.S.C. § 7405(b). As such, the court held that the "control" test was inapplicable to these physicians. 749 F.2d at 484. This holding does nothing to strengthen Carrillo's position. Dr. Ozimek was practicing medicine at Madigan pursuant to a contractual agreement with his employer, Pediatric Providers, and not by a statutory appointment.

For the above reasons, the district court was correct in holding that Dr. Ozimek was an independent contractor. The government therefore is not responsible under the FTCA for Dr. Ozimek's alleged negligence.

**2.** As the court in *Lurch* noted, Congress has indicated unambiguously that the government may be liable for a physician's malpractice under the FTCA *if that physician is an employee of the government. See Lurch*, 719 F.2d at 337 n. 7, *citing* former 38 U.S.C. § 4116 (now § 7316).

The section cited in *Lurch* applies to the negligence of any VA "medical care employee." 38 U.S.C. § 7316. It does not extend the government's liability to cover the negligence of contract physicians.

### B. Whether the Government is Estopped from Denying Liability

In addition to the traditional elements of estoppel, "[a] party seeking to raise estoppel against the government must establish affirmative conduct going beyond mere negligence." *Watkins v. United States Army,* 875 F.2d 699, 707 (9th Cir.1989) (en banc), *cert. denied,* 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990) (citation omitted). Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government. *Watkins,* 875 F.2d at 707.

Carrillo asserts that the government held out Madigan as a full-service hospital and never informed Carrillo that Dr. Ozimek was an independent contractor. However, Carrillo signed a consent form which stated that the doctor was a civilian. This form further identified the pediatric care provider as Pediatric Providers, P.S., and not the Army. There is no evidence that the government concealed or misrepresented Dr. Ozimek's status.

We must contend, though, with contrary holdings by two district courts in other circuits. In *Gamble v. United States,* 648 F.Supp. 438 (N.D.Ohio 1986), the court held that the government was equitably estopped from denying liability for the negligence of a private anesthesiologist who contracted with a VA hospital to administer anesthesia during surgery. The court reasoned that the doctor's practice in the hospital with the consent of the VA, and the VA's holding itself out as a full-service hospital, constituted the "affirmative actions necessary to estop the government." *Id.* at 441. This holding was followed on nearly identical facts in *Utterback v. United States,* 668 F.Supp. 602 (W.D.Ky.1987).

*Gamble* and *Utterback* confuse affirmative action with affirmative *misconduct.* In this circuit, the government's conduct must be wrongful for the government to be estopped. *See Watkins,* 875 F.2d at 707 ("estoppel will only apply where the government's wrongful conduct will cause a serious injustice").

An essential element of any estoppel claim is that the party asserting the estoppel must rely to its detriment on the misrepresentation or concealment. *See Watkins,* 875 F.2d at 709. Thus, even if the reasoning in *Gamble* and *Utterback* were sound, Carrillo still would have to show that she relied to her detriment on the government's alleged misconduct. As the district court noted, Carrillo's detrimental reliance was far from proven. The record presented to this court does not show any evidence that Carrillo would have acted differently had she known that Dr. Ozimek was an independent contractor.

For the above reasons, Carrillo's estoppel argument must fail. The district court was correct in holding that her estoppel claim was without merit.

## IV. CONCLUSION

The decision of the district court is AFFIRMED.