**Dean W. LILLY, Plaintiff–Appellant,**

v.

**Paul R. FIELDSTONE, M.D., and United States of America, Defendants–Appellees.**

**No. 87–1048.**

United States Court of Appeals, Tenth Circuit.

June 5, 1989.

As Amended July 11, 1989.

---

Steven Hornbaker (Craig J. Altenhofen with him on the brief) of Harper, Hornbaker, Hepperly and Altenhofen, Chartered, Junction City, Kan., for plaintiff-appellant.

Alleen S. Castellani, Asst. U.S. Atty., D. of Kansas (Benjamin L. Burgess, Jr., U.S. Atty., with her on the brief), Topeka, Kan., for defendants-appellees.

(James M. Warden and Melinda Swanson Whitman of Blackwell Sanders Matheny Weary & Lombardi, Overland Park, Kan., on the brief for Paul R. Fieldstone, M.D.)

Before McKAY, LOGAN, and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

In this malpractice diversity case, plaintiff appeals the district court's order allowing substitution of the parties of the United States for defendant Dr. Paul Fieldstone. The United States is the proper party defendant in "any civil action or proceeding brought in any court against any employee of the government or his estate for ... damage or injury." 28 U.S.C. § 2679(c) (1982), Tort Claims Procedure, Exclusiveness of Remedy. The propriety of the trial court's substitution turns on whether Dr. Fieldstone was a government employee or an independent contractor when he performed Private Lilly's surgery. After substitution, the trial court dismissed the complaint based upon *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).[1] We reverse the district court's order allowing substitution of the parties and remand for trial on the plaintiff's malpractice claim.

While a patient at Irwin Army Hospital, Private Dean Lilly needed emergency urological surgery. Because the staff urologist was absent, the hospital called Dr. Fieldstone, a civilian consultant on call at the request of the regular Army urologist, to perform the plaintiff's emergency surgery. Private Lilly sued Dr. Fieldstone for medical malpractice arising out of that surgery.

There is no factual dispute in this case. We review questions of law *de novo*. *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988). The standard of review on appeal is the same standard applied by the trial court in making its initial ruling. *Boise City Farmers Coop. v. Palmer*, 780 F.2d 860, 866 (10th Cir.1985).

The critical determination in distinguishing a federal employee from an independent contractor is the power of the federal government "to control the detailed physical performance of the contractor." *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). In our circuit "the key inquiry under this control test is whether the Government supervises the day-to-day operations of the individual." *Lurch v. United States*, 719 F.2d 333, 337 (10th Cir.1983).

In *Lurch*, a case similar to the one before us, the plaintiff sued the Veterans Administration hospital under the Federal Tort Claims Act alleging that a surgeon's negligence caused his hearing loss. In dicta, we noted that

> Because a physician must exercise his own professional judgment, no one controls the detailed physical performance of his duties. Given this, by strictly following the traditional control test it is doubtful whether a physician could ever be found to be a federal employee under the FTCA.

719 F.2d at 337. Although the application of a "modified control" test "seems logical" in this situation, we did not adopt such a test in *Lurch* because the issue was not

---

1. The *Feres* doctrine grants full immunity to the Government for injuries to military personnel "which arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

before us. *Id.* at 337–38. *But see Quilico v. Kaplan,* 749 F.2d 480, 484–85 (7th Cir. 1984) (holding strict control test inapplicable in determining the scope of immunity for physicians under federal law because medical ethics require physicians to exercise independent judgment in the best interest of their patients).

■ While the defendant urges us to adopt *Quilico* 's "modified control" test, we do not find that label helpful. It is uncontroverted that a physician must have discretion to care for a patient and may not surrender control over certain medical details. Therefore, the "control" test is subject to a doctor's medical and ethical obligations. Whether we label the test "control" or "modified control" is not determinative. What we must do in the case of professionals is determine whether other evidence manifests an intent to make the professional an employee subject to other forms of control which are permissible. A myriad of doctors become employees by agreement without surrendering their professional responsibilities. The United States is equally capable of making such an arrangement by express, unambiguous agreement. Our conclusion in this case is that it simply has failed on this record to demonstrate that that was the nature of its agreement with Dr. Fieldstone.

We now address the facts and analysis which have led us to our judgment. The plaintiff contends that Dr. Fieldstone was an independent contractor when he performed this surgery because the hospital had hired Dr. Fieldstone as a consultant in urology. Although the defendant was a member of the Army Reserve, he was not fulfilling that obligation at Irwin Army Hospital at the time the events at issue occurred. Plaintiff argues that defendant was acting solely in his role as consultant (*i.e.,* independent contractor) when he performed the surgery.

The trial court analyzed this case under *Norton v. Murphy,* 661 F.2d 882 (10th Cir. 1981). The factors considered by the *Nor-* ton court and applied by the trial court in this case are: (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses her own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others. *Id.* at 884–85.

The trial court based its "control" determination on the first factor in *Norton,* the intent of the parties, gleaning the parties' intent almost solely from a Provider and Pledge Agreement signed by Dr. Fieldstone.[2] We are unpersuaded that this agreement adds anything which illuminates the intent of the parties on the issue of whether Dr. Fieldstone was an employee or a private contractor. The last eighteen words of the quoted portion are, at best, ambiguous. The by-laws are not an exhibit to the record and there is no testimony regarding them. In any event, it is not clear *who* is being released—the government or Dr. Fieldstone. Because the language of the agreement is so ambiguous, we accord the agreement no weight in our "control" determination.

Under our review of all of the factors in this case, we find that Dr. Fieldstone is an independent contractor. Although Dr. Fieldstone argues that the Provider and Pledge Agreement explicitly guaranteed him immunity from civil liability and that he specifically relied on its language and his personal knowledge that military doctors are immune from civil liability when he agreed to substitute for a military specialist in an emergency, we believe that factors raised by the plaintiff and the defendant's own admissions more clearly manifest the parties' intent. Dr. Fieldstone did not have an arrangement with the hospital whereby he was always required to see patients there. For instance, Dr. Fieldstone could refuse to treat a military patient if he

**2.** The Provider and Pledge Agreement provides "I, Paul Raymond Fieldstone, hereby pledge to maintain an ethical practice, to provide for continuous care of my patients, and to acknowledge any medical or dental staff by-laws requirements for release and immunity from civil liability provisions."

wanted to, and in fact in this case he initially requested that the Army send Private Lilly to another hospital for treatment. Although the Army denied his request and Dr. Fieldstone performed Private Lilly's surgery at Irwin Army Hospital, he certainly was not required to do so. In other instances he was free to see patients at his private office. (Plaintiff's Brief, citing Col. Alexander's Depo., at 45, lines 8–22.)

In addition, Dr. Fieldstone billed the Army separately at his standard specialty fee rates. He did not reduce his fees because he served as a National Guardsman or as a civilian consultant to the military. He maintained a private off-base office, and had exclusive control over his patients and records. The Army also did not furnish Dr. Fieldstone with permanent and private office space or secretarial help at the hospital. He only occasionally used a temporary office when he dictated his operative reports. Dr. Fieldstone did not work under a written contract with the government, and was never regularly scheduled on the hospital duty roster. Nor did he maintain regular or prescribed office hours as a civilian consultant.

We find that the Army controlled little about the end result or the manner and method of reaching a result. Clearly, the end result (*i.e.* the outcome of surgery) was beyond the Army's control. Although Dr. Fieldstone contends he was subject to the same rules, regulations and hospital control as other military physicians, and that he had limited contact and no control over military patients he treated in emergencies after his work was completed, nothing in the record suggests that this relationship was any different than it would be for a doctor in a private hospital with staff privileges. From the record it appears that he retained all the control over the choices he made, that he would have had in a private hospital. Surely, being subject to hospital's rules as a condition of staff privileges does *not* remotely make a private physician an employee of that hospital.

We agree with the trial court that the "control" determination is difficult to make; but, on balance, viewing these factors as a whole, we cannot agree that the government "controlled" Dr. Fieldstone enough to render him a government employee. We cannot fairly say that the government "supervise[d] the day-to-day operations" of Dr. Fieldstone. *Lurch,* 719 F.2d at 337. Because we conclude on the record before us that Dr. Fieldstone is an independent contractor, we reverse the trial court's order substituting parties and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.