936 F.2d 584
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Audrey SUMMA, personal representative of the Estate of
Richard Lee Summa, Jr., deceased, Richard Lee
Summa, Sr. and Audrey Summa, Plaintiffs-Appellants,
v.
UNITED STATES of America, Mescalero Apache Tribe, Angelita
Bob, Defendants-Appellees.
 No. 90-2140.
 United States Court of Appeals, Tenth Circuit.
 June 25, 1991.
 
 Before McKAY, SETH and SEYMOUR, Circuit Judges.
 ORDER AND JUDGMENT*
 SEYMOUR, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs appeal the district court's order of June 15, 1990, dismissing their claims against the Mescalero Apache Tribe and Angelita Bob (collectively, tribal defendants) and the district court's order of June 25, 1990, dismissing their claims against the United States. In the summer of 1988, plaintiffs' fifteen-year-old son, Richard, was a paid participant in the Mescalero Apache Tribe Summer Youth Program, a federally funded program. As part of the program, he cleared debris from the roadside. On June 20, 1988, Richard was thrown from the top of a pile of branches on which he was sitting in the back of a pickup truck driven by Bob. He died as a result of the head injuries he received.
 
 
 3
 Plaintiffs brought suit against the United States and tribal defendants under the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346, 2671-2680. Plaintiffs alleged in their complaint that the district court had jurisdiction over the action under the FTCA "because the United States of America and the Mescalero Tribe are a party. Angelita Bob is named as an individual defendant and the United States District Court has jurisdiction, because she is a co-defendant along with the United States of America and the Mescalero Apache Tribe." Rec., vol. I, doc. 1, Complaint at 1. Plaintiffs also alleged that the United States has a trust relationship with Indians, and in particular "has a special relationship as educators for Indian children and to administer programs for Indian children of which the Job Training Partnership Act is one." Id. at 4.
 
 
 4
 The tribal defendants moved to dismiss plaintiffs' claims against them on the ground that plaintiffs' exclusive remedy lay under the New Mexico Workmen's Compensation Act, N.M.Stat.Ann. Secs. 52-1-1 through 52-1-70. The United States also moved to dismiss the action on the ground that the district court lacked subject matter jurisdiction over plaintiffs' claims. The United States contended that because no federal employee or federal agency was involved in the incident, the FTCA did not confer jurisdiction on the court to consider the claims against the United States. The government also argued that the district court could not exercise pendent-party jurisdiction over plaintiffs' claims against the tribal defendants.
 
 
 5
 Although the district court ruled on the merits of the tribal defendants' motion without considering the government's argument that the court lacked subject matter jurisdiction over the claims against the tribal defendants, we must address the jurisdictional issues first. "[T]he court's first duty is to determine its jurisdiction to entertain and decide a case on its merits." Thompson v. United States, 291 F.2d 67, 68 (10th Cir.1961). Even if the parties do not raise the issue of subject matter jurisdiction, the court has a duty to do so sua sponte. See Tuck v. United Servs. Auto Ass'n, 859 F.2d 842, 844 (10th Cir.1988), cert. denied, 489 U.S. 1080 (1989). For the reasons set forth below, we conclude that the district court lacked subject matter jurisdiction over all plaintiffs' claims.
 
 
 6
 The FTCA constitutes a limited waiver of sovereign immunity, see United States v. Orleans, 425 U.S. 807, 813 (1976), and "[t]he terms of the government's consent to be sued define the court's jurisdiction," Ewell v. United States, 776 F.2d 246, 248 (10th Cir.1985). The government's consent to be sued under the FTCA extends only to
 
 
 7
 claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
 
 
 8
 28 U.S.C. Sec. 1346(b) (emphasis added). The consent to be sued does not extend to acts of independent contractors or their employees. See id. at Secs. 1346, 2671; Lurch v. United States, 719 F.2d 333, 336-37 (10th Cir.1983), cert. denied, 466 U.S. 927 (1984).
 
 
 9
 The principal issue in this appeal is whether Richard's death was caused by the negligence or wrongful act of any government agency or employee, as those terms are defined in the FTCA. See 28 U.S.C. Sec. 2671. The government contends that the tribe was merely an independent contractor; the tribe was not a federal agency, nor was Bob a federal employee. Plaintiffs argue that the regulations with which the tribe had to comply to qualify for the federal funds were so pervasive as to render the tribal defendants federal agents or employees.
 
 
 10
 "[T]he question whether one is an employee of the United States is to be determined by federal law." Lurch v. United States, 719 F.2d at 337. "The critical determination in distinguishing a federal employee from an independent contractor is the power of the federal government 'to control the detailed physical performance of the contractor.' " Lilly v. Fieldstone, 876 F.2d 857, 858 (10th Cir.1989) (quoting Logue v. United States, 412 U.S. 521, 528 (1973)). The key inquiry "is not whether the [entity] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." United States v. Orleans, 425 U.S. at 815.
 
 
 11
 The tribal program in which Richard participated was a Summer Youth Employment Training Program funded under the Job Training Partnership Act (JTPA), 29 U.S.C. Secs. 1501-1781. To qualify as a grantee for the program, the tribe had to comply with all the criteria set forth in 20 C.F.R. pt. 632, subpts. B-H, which concern Indian and Native American employment and training programs.
 
 
 12
 Pursuant to the regulations, the tribe was responsible for the design and management of the program. Id. at Secs. 632.75-.89. Herbert Fellman, the chief of the Division of Indian and Native American Programs (DINAP) for the Department of Labor averred in an affidavit that the federal government was not involved in supervising the daily activities of grantees of Indian and Native American programs. Specifically, he stated:
 
 
 13
 6. The day-to-day activities of the grantees in operating their programs such as hiring staff, managing and operating the program, recruiting and supervising participants are the sole responsibility of the grantees. They exercise self-determination in designing their programs to meet the local needs of the community. However, they must comply with the JTPA and the implementing regulations.
 
 
 14
 7. The DINAP staff is not involved in any aspect of the daily operations of the grantees' programs. Since the staff of DINAP is about 23 professionals and clericals and there are 182 grantees, this would be impossible.
 
 
 15
 Rec., vol. I, doc. 42, ex. A, Declaration of Herbert Fellman at 3.
 
 
 16
 Likewise, Corrine Blaylock, who was the director of the program for the tribe, testified in her deposition that there was no on-site representative of the Department of Labor; the program funding came directly from Washington, D.C., and the person to whom she reported was in Washington. Id. ex. C, Deposition of Corrine Fern H. Blaylock at 35, 53. She explained: "Department of Labor didn't run this operation. The Mescalero Apache Tribe ran the operation, and we were all tribal employees." Id. at 61-62.
 
 
 17
 Thus, both the regulations and the testimony of the parties involved established that the federal government did not supervise the day-to-day operations of the tribal program. Furthermore, the government's intent that grantees of Indian and Native American employment and training programs and their employees not be considered federal employees is specifically set forth in 20 C.F.R. Sec. 632.84, which provides: "Participants shall not be deemed Federal employees and shall not be subject to the provisions of law relating to Federal employment." See Lurch v. United States, 719 F.2d at 338 (holding physician was not federal employee based on language of contract that provided he was not to be considered federal employee for any purpose, and working arrangement under contract).
 
 
 18
 Plaintiffs bore the burden of proving that the district court had subject matter jurisdiction over their claims. See Miller v. United States, 710 F.2d 656, 662 (10th Cir.), cert. denied, 464 U.S. 939 (1983). In response to the government's motion and evidence that the tribe was not a federal agency and Bob was not a federal employee, plaintiffs simply recited the various regulations with which the tribe had to comply to qualify for federal funding. Plaintiffs noted that "[w]hile the grantee may have some responsibility for the day-to-day operation of the program, if it does not comply with the numerous requirements of the United States, the program may be in jeopardy," and asserted: "The Department of Labor, through its numerous requirements, exercises a substantial amount of control over the operation of the JTPA programs. The grantees are so constrained by the federal requirements that it can hardly be said that control of the day-to-day operations amounts to any control at all." Rec., vol. I, doc. 44, Plaintiffs' Memorandum in Opposition to United States of America's Motion to Dismiss or in the Alternative, Motion for Summary Judgment at 4, 6.
 
 
 19
 Plaintiffs' recitation of the extensive program regulations, however, was not sufficient to raise a question of fact with respect to whether the tribe was a federal agency or Bob was a federal employee. "[T]he Government may fix specific and precise conditions to implement federal objectives. Although such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs--or of state governmental bodies--into federal governmental acts." United States v. Orleans, 425 U.S. at 816.
 
 
 20
 Although the only basis of jurisdiction plaintiffs alleged in their complaint was the FTCA, in response to the government's motion to dismiss, plaintiffs also argued that "[t]he United States' trust relationship with Native Americans raises issues of fact with respect to its liability for the death of Richard Summa, Jr." Rec., vol. I, doc. 44 at 3. In support of their argument that such a trust relationship exists and creates liability on the part of the government, plaintiffs cited United States v. Mitchell, 463 U.S. 206 (1983), and Morton v. Ruiz, 415 U.S. 199 (1974).
 
 
 21
 Plaintiffs did not cite any statutes or regulations that impose clear fiduciary duties on the United States like those found actionable in United States v. Mitchell, 463 U.S. at 224. We need not decide whether the general trust relationship the United States has with Indians would be sufficient to impose an actionable duty on the government here, however, because plaintiffs did not allege any specific breach of such a duty.
 
 
 22
 Because plaintiffs failed to establish that their son's death was caused by "the negligent or wrongful act of any employee of the Government," 28 U.S.C. Sec. 1346(b), a necessary prerequisite to jurisdiction under the FTCA, or to establish any other basis for federal jurisdiction over their claims against the United States, the district court properly dismissed those claims for lack of subject matter jurisdiction.
 
 
 23
 Plaintiffs' claims against the tribal defendants must be dismissed for lack of subject matter jurisdiction, as well.[1] The only basis for jurisdiction plaintiffs asserted below was the FTCA. Plaintiffs argued that the district court could assert pendent-party jurisdiction over the tribal defendants as joint tortfeasors with the United States "if the criteria for intervention of right or for compulsory joinder are met." Rec., vol. I, doc. 44 at 6. They contended that "[j]oining the Mescalero Apache Tribe and Angelita Bob does not deprive the Court of jurisdiction. Their presence in this suit is necessary to adjudicate complete relief for the Plaintiff[s]." Id. Plaintiffs reassert these arguments on appeal. See Appellants' Reply Brief at 6.
 
 
 24
 Although we held that a court could exercise pendent-party jurisdiction under the FTCA in Stewart v. United States, 716 F.2d 755, 757-59 (10th Cir.1982), cert. denied, 469 U.S. 1018 (1984), the Supreme Court has since made clear that the exercise of such jurisdiction is impermissible, because the FTCA "defines jurisdiction in a manner that does not reach defendants other than the United States." Finley v. United States, 490 U.S. 545, 553 (1989). "[T]he statutory power to decide a case including ... a claim [against a private party over which the court has no independent jurisdiction] simply does not exist, since the FTCA provides jurisdiction only for claims against the United States." Id. at 553 n. 6.
 
 
 25
 The judgment of the United States District Court for the District of New Mexico is AFFIRMED as to the United States and REMANDED as to defendants Mescalero Apache Tribe and Angelita Bob with directions to modify the judgment to reflect a dismissal for lack of subject matter jurisdiction.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Because we lack subject matter jurisdiction over plaintiffs' claims against the tribal defendants, we do not address the merits of the workmen's compensation issue