**ESTATE of Lawrence A. KOUT, Eva L. Kout, Lance A. Kout, Deanna M. Lyon, Plaintiffs,**

v.

**UNITED STATES of America, Seyed A. Sajadi, and Managed Health Care, Ltd., Defendants.**

**Case No. 01–4175–SAC.**

United States District Court, D. Kansas.

Nov. 22, 2002.

Michael R. Clarke, Schlagel, Damore & Gordon, L.L.P., Olathe, KS, for plaintiffs.

David D. Plinsky, Topeka, KS, Stephen S. Brown, Matthew M. Merrill, Niewald, Waldeck & Brown, P.C., Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This medical malpractice case comes before the court on the following motions: plaintiff's motion to estop the government (Dk. 39); the government's motion to dismiss a claim (Dk. 41); and defendants Sajadi and Managed Health Care, Ltd.'s motion for judgment on the pleadings (Dk. 68). Discovery has been stayed pending decision of these motions.

### Facts

The facts underlying these motions are few and undisputed. On March 23 and 24, 2000, Lawrence A. Kout visited the Colmery–O'Neil Veterans Administration Hospital in Topeka, Kansas twice: once from approximately 4:15 a.m. to 5:35 a.m., and once from 6:45 p.m. until his death the following morning. Each time he was treated by Dr. Seyed A. Sajadi. The second time, Dr. Dasaraju was asked to consult on Mr. Kout's case, and was in charge of his care and treatment from approximately 12:20 a.m. on March 24 until approximately 3:35 a.m., when he was pronounced dead.

The estate and family of the deceased initially brought suit pursuant to the Federal Tort Claims Act ("FTCA") solely against the government, asserting that Dr. Sajadi and others were negligent in their care and treatment of Mr. Kout. Plaintiffs later amended their complaint to add Dr. Sajadi and Managed Health Care. Ltd. as defendants.

The government responds that Dr. Sajadi was not its employee on the relevant dates, but was working for Managed Health Care, an independent contractor of the government, precluding any liability under the FTCA. Plaintiffs reply that the government should be equitably estopped from asserting the independent contractor status of Dr. Sajadi because of factors including the government's delay in so notifying plaintiffs until after the statute of limitations had run. Additionally, defendants Sajadi and Managed Health Care assert that the statute of limitations expired before plaintiffs filed suit against them. Plaintiffs contend that their suit against these defendants is permitted because of the relation back doctrine. These controlling procedural issues are ripe for determination.

### Government's motion to dismiss

The court first examines the government's motion to dismiss the FTCA claims against it based upon any acts or inaction of Dr. Sajadi, pursuant to Fed.R.Civ.P. 12(b)(1).[1] This motion is founded upon the assertion that at all relevant times, Dr. Sajadi was not an employee of the government, but was an employee of an independent contractor, barring all FTCA claims against the government based upon his acts or inactions.

The parties do not dispute that the FTCA waives the government's sovereign immunity for tortious acts caused by its employees, but preserves sovereign immunity for identical acts or omissions of independent contractors. *See* 28 U.S.C.A. § 1346(b); *Williams v. United States,* 50 F.3d 299, 305 (4th Cir.1995)(district court lacks subject matter jurisdiction to hear FTCA claim arising out of the actions of an independent contractor); 28 U.S.C. § 2671 (defining "federal agency" to exclude "any contractor of the United States."); *Kirchmann v. United States,* 8 F.3d 1273, 1275 (8th Cir.1993) (affirming dismissal for want of subject matter jurisdiction under Rule 12(b)(1) because the entity's status as an independent contrac-

---

**1.** No motion to dismiss has been filed relating to the acts of Dr. Dasaraju, whom the government admits is a VA employee. physician in ICU.

tor precluded imputed liability on behalf of the United States); *Broussard v. United States*, 989 F.2d 171, 177 (5th Cir.1993) (per curiam) (noting that the proper practice is to dismiss for want of jurisdiction for purposes of the FTCA under Rule 12(b)(1), not to grant summary judgment under Rule 56(c)). Given the controlling law, no FTCA claim will lie against the government in this case unless Dr. Sajadi was an employee of the government on March 23–24, 2000.

■ The parties dispute the test which should be used to determine this issue. Plaintiffs assert that the proper focus of the inquiry should be "what control the government actually exercised over Dr. Sajadi's practice," regardless of the intent of the parties. Dk. 50, p. 5.[2] The government states that its intent is determinative. Both parties rely largely on the case of *Lilly*, supra.

The court agrees that *Lilly* establishes the governing law, and that its language leaves room for dispute. There, the Tenth Circuit addressed the issue by stating:

> The critical determination in distinguishing a federal employee from an independent contractor is the power of the federal government "to control the detailed physical performance of the contractor." *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 2219, 37 L.Ed.2d 121 (1973). In our circuit "the key inquiry under this control test is whether the Government supervises the day-to-day operations of the individual." *Lurch v. United States*, 719 F.2d 333, 337 (10th Cir.1983).

> In *Lurch*, a case similar to the one before us, the plaintiff sued the Veterans Administration hospital under the Federal Tort Claims Act alleging that a

surgeon's negligence caused his hearing loss. In dicta, we noted that

> Because a physician must exercise his own professional judgment, no one controls the detailed physical performance of his duties. Given this, by strictly following the traditional control test it is doubtful whether a physician could ever be found to be a federal employee under the FTCA.

719 F.2d at 337. Although the application of a "modified control" test "seems logical" in this situation, we did not adopt such a test in *Lurch* because the issue was not before us. *Id.* at 337–38. But *see Quilico v. Kaplan*, 749 F.2d 480, 484–85 (7th Cir.1984) (holding strict control test inapplicable in determining the scope of immunity for physicians under federal law because medical ethics require physicians to exercise independent judgment in the best interest of their patients).

While the defendant urges us to adopt *Quilico's* "modified control" test, we do not find that label helpful. It is uncontroverted that a physician must have discretion to care for a patient and may not surrender control over certain medical details. Therefore, the "control" test is subject to a doctor's medical and ethical obligations. Whether we label the test "control" or "modified control" is not determinative. What we must do in the case of professionals is determine whether other evidence manifests an intent to make the professional an employee subject to other forms of control which are permissible. A myriad of doctors become employees by agreement without surrendering their professional responsibilities. The United States is equally capable of making such an ar-

---

**2.** Plaintiffs have additionally filed without leave of court, and in violation of the local rules, a surreply (Dk. 58) which the court shall not consider.

rangement by express, unambiguous agreement.

*Lilly v. Fieldstone,* 876 F.2d 857, 858–59 (10th Cir.1989).

A more recent case in which the Tenth Circuit interpreted *Lilly* sheds additional light on the proper test, in stating:

> In determining whether an individual is a federal employee or an independent contractor, the critical question is whether the federal government has the power to control the detailed physical performance of the individual. [*See Lilly,* 876 F.2d at 858.] We have held that the key inquiry under this control test is "whether the Government supervises the day-to-day operations of the individual." *Id.* (quotation marks omitted). This inquiry involves consideration of a number of factors, including the intent of parties, the allocation of insurance obligations, and whether the government in fact controlled only the end result of [the physician's] efforts or also controlled the manner and method in which [the physician] conducted his activities. *See id.* at 859.

*Duplan v. Harper,* 188 F.3d 1195, 1200 (10th Cir.1999).

■■■ Application of the factors noted above to the facts shown by the record[3] reveals that Dr. Sajadi was not an employee of the government at the relevant time. Plaintiffs do not dispute the fact that a written contract existed between the Colmery–O'Neil Veterans Administration Hospital in Topeka, Kansas, ("VA") and Managed Health Care, Ltd., requiring the latter to provide the Officer of the Day (OD) for the Urgent Care division of that hospital during the relevant time. Plain-

tiffs do not challenge defendant's assertion that the contract covered Dr. Sajadi, and that Dr. Sajadi was assigned by Managed Health Care, Ltd. as the OD on March 23–24, 2000. Nor do plaintiffs dispute any of the governing language of the contract.

The contract states, in pertinent part, as follows:

6. Personnel Policy

The contractor shall be responsible for protecting the personnel furnishing services under this contract. To carry out this responsibility, the contractor shall provide the following for these personnel: Worker's compensation, income tax withholding, and social security payments. The parties agree that such personnel shall not be considered VA employees for any purpose and shall be considered employees of the contractor.

Dk. 41, Exh. A 4, p. 16.

1.8 Indemnification and Medical Liability Insurance

It is expressly agreed and understood that this is a nonpersonal services contract ... under which the professional services rendered by the Contractor or its health care providers are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medial (sic) treatments. The contractor and its health care providers shall be liable for their liability-producing acts or omis-

---

**3.** In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings, without converting the motion into one for summary judgment under Rule 56. *Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5

(10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Rothenberger v. U.S. By and Through U.S. Air Force,* 931 F.2d 900, 1991 WL 70719, *2 (10th Cir.1991).

sions. The Contractors shall maintain or require all health-care providers performing under this contract to maintain, during the term of this contract, professional liability insurance issued by a responsible insurance carrier of not less than [stated amount] per specialty per occurrence.

Dk. 41, Exh. A 4, p. 16. The court has found no language in the contract or other documents which contradicts the plain language set forth above, or which otherwise supports plaintiff's assertion that Dr. Sajadi was a government employee, nor do plaintiffs point to any.

Instead, plaintiffs assert that "the contract is largely immaterial as the issue is whether Dr. Sajadi was an employee." (Dk. 50, p. 6.) Although the court is confounded by this statement, plaintiffs apparently mean that it is not the contract, but the control test which should govern the determination of the issue. Plaintiffs ignore the fact that the contract speaks volumes about the government's control, in stating that the Government "retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medi[c]al (sic) treatments." *Id.* This language, which reveals the clear intent of the parties, has not been shown to be inapplicable to the present case. Therefore, by virtue of this agreement, the government retained no control over Dr. Sajadi's professional medical judgment, diagnosis, or specific medical treatments, the very aspects of his practice which give rise to plaintiffs' suit.

Nor have plaintiffs shown that the "actual control" exercised by the government over Dr. Sajadi was in any way inconsistent with the language of the controlling contract, set forth above. No pattern or practice of the parties has been shown

evidencing any degree of control by the government over the aspects of Dr. Sajadi's practice which give rise to plaintiffs' complaints.

Plaintiffs urge the court to consider items such as the following in making the "control" determination: separate billing at standard rates, exclusive control by the physician over his patients and records, lack of permanent office space at the hospital, no secretarial help at the hospital, not being regularly scheduled on the hospital duty roster, no requirement that he see patients only at the hospital, and some ability to refuse to see a military patient. (Dk. 50, p. 5). Plaintiff offers no evidence to show that any of these facts is present in this case, however. Compare *Lilly,* supra.

■ In tacit recognition of this factual failing, plaintiffs assert that the "relevant facts to resolve the question presented were not developed" because "the Defendant waited so long to raise this issue." (Dk. 50, p. 6). Plaintiffs request additional discovery on this issue, at defendant's expense, including attorneys' fees. This request shall be denied as futile, given the clear and unequivocal language of the governing written agreement between the VA and Managed Health Care, Ltd., relating to control of Dr. Sajadi's practice. Because Dr. Sajadi was not an employee of the government during the relevant time, no FTCA claims based upon his actions or inactions may be brought against the government.

**Plaintiff's motion to estop the government**

■ The court next addresses plaintiff's motion to estop the government from asserting that Dr. Sajadi was employed by an independent contractor, rather than by the government. Although plaintiffs have requested oral argument on this motion,

the court finds that oral argument would not materially assist the court, so denies that request.

Plaintiff asserts that estoppel is warranted because "defendant knew that the plaintiffs believed that Dr. Sajadi was the defendant's employee, that the plaintiffs believed Dr. Sajadi's negligence caused their father's death, and that the plaintiffs intended to hold the defendant legally responsible, under the FTCA, for the damages caused by Dr. Sajadi's negligence." Dk. 40, p. 9. The government proposes that this is not the proper test to use in determining whether to estop the government.[4] The court agrees.

■ The law governing this decision is clear. When a party tries to estop the Government, special considerations apply. *Lurch v. United States,* 719 F.2d 333, 341 n. 12 (10th Cir.1983), citing generally, Note, Equitable Estoppel of the Government, 79 Colum. L.Rev. 551, 552–54, 565–68 (1979). A showing of "affirmative misconduct" is necessary to estop the Government. *See INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12(1982) (per curiam); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam); *INS v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973) (per curiam).

■ The Tenth Circuit's requirements for a claim of estoppel against the Government are:

(1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely

on the former's conduct to his injury. *(citation omitted).*

*Lurch,* 719 F.2d at 341.

The court finds that plaintiffs fail to show the basic first element of estoppel. No showing is made that government's counsel knew of any fact which might lead it to claim that Dr. Sadaji worked for an independent contractor before the statute of limitations expired. Instead, it is undisputed that the government's counsel learned of this fact only approximately two weeks before it disclosed that fact to plaintiffs' counsel, long after the statute had expired.

■ Plaintiff contends that because the independent contractor agreement was in existence, the government itself knew of the agreement and thus of Dr. Sajadi's status as a contract employee from the beginning of administrative proceedings which predated initiation of suit, if not before. Plaintiff seeks to impute this knowledge to government's counsel, and to impose upon him a duty to discover and disclose. The court finds no basis in law for such an approach, and plaintiffs offer none.

Here, the government has not been shown to have taken any affirmative acts or made any misrepresentations to plaintiffs relating to Dr. Sajadi's employment status during the course of the administrative proceedings which predated the filing of this case, during discovery proceedings in this case, or at any other time. Neither the government's answer nor any discovery documents included in the record before this court assert that Dr. Sajadi was or was not its employee. Plaintiffs have not alleged that at any time, the government made any verbal or written representations to them that Dr. Sajadi was or was not its employee. Plaintiffs complain

---

4. Both briefs are unusually acrimonious.

of the government's silence during administrative proceedings prior to their initiation of this suit, but have not shown the court that this particular issue ever arose, or the manner in which it was addressed, if at all, by the government.

The court therefore finds that at no time prior to the government's assertion to plaintiffs that Dr. Sajadi was not a governmental employee, did the government made any representation intended to lead or which would have led plaintiffs or any reasonable persons to believe that Dr. Sajadi was an employee of the government. Rather, the government took no action and made no representations whatsoever on this topic. Its delay in learning the true status of Dr. Sajadi may or may not evidence a lack of diligence, but fails to shows any intent or attempt to mislead plaintiffs.

The court finds that plaintiffs fail on at least the first two elements of estoppel, and additionally have not shown that the government engaged in any affirmative misconduct. Plaintiffs' motion to estop shall therefore be denied.

**Motion for judgment on the pleadings**

Defendants Sajadi and Managed Health Care, Ltd., have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), contending that suit against them was filed after the relevant statute of limitations had run. As originally styled, plaintiffs brought suit on November 20, 2001, against the United States of America alone. By an amended complaint filed on August 16, 2002, plaintiffs first named Dr. Sajadi and Managed Health Care, Ltd. as parties defendant.

The parties agree that plaintiffs' claims are subject to a two year statute of limitations, and that the date plaintiffs first named these defendants as parties was more than two years after the cause of action accrued. Defendants thus contend that the action is barred by virtue of the statute of limitations.

■ Plaintiffs counter that under Kansas law, the action relates back to the date of the original pleading. *See* K.S.A. § 60–215(c). When a complaint is filed in federal court, however, the matter of relation back of amendments to pleadings is governed by the Federal Rules of Civil Procedure. *Lemmons v. Board of County Com'rs of County of Brown*, 2002 WL 370227, *2 (D.Kan.2002) (citing cases). This distinction is largely academic, however, as the language of the two is substantially similar.

■ Under Fed. R. 15(c)(3), an amendment adding a new party will relate back to the date of the original complaint only if three conditions are met:

(1) the amended complaint involves the same transaction or occurrence as the original complaint; (2) the new party had notice of the action such that the party will not be prejudiced in maintaining a defense on the merits; and (3) the new party knew or should have known that but for a mistake in identity, the action would have been brought against him.

*Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1226–27 (10th Cir.1991).

Defendants challenge solely the mistaken identity requirement, contending that neither Dr. Sajadi nor Managed Health Care Ltd. knew or should have known that but for a mistake in identity, the action would have been brought against them. Defendant asserts that plaintiff's error in naming only the government in its original complaint was the result of plaintiff's strategic choice to assume that Dr. Sajadi was an employee of the government, rather than the result of any mistaken identity. Defendant further contends that neither Dr. Sajadi nor Managed Health Care Ltd.

is a party whose identity was or could reasonably have been mistaken with that of the government.

 Where a plaintiff's failure to name a defendant stems from lack of knowledge rather than a mistake in identification, the plain language of Rule 15(c)(3) does not permit relation back. *Henry v. Fed. Deposit Ins. Corp.*, 168 F.R.D. 55, 59 (D.Kan.1996); *see Mitchell v. Unified Government*, 2000 WL 1920036 (D.Kan. Dec. 21, 2000). Similarly, errors due to tactical mistakes, rather than to true mistakes in identity, do not meet the requirements of the relation back rule. *Bloesser v. Office Depot, Inc.*, 158 F.R.D. 168, 171 (D.Kan. 1994).

Here, plaintiffs failed to name Dr. Sajadi and/or Managed Health Care, Ltd. because they assumed that Dr. Sajadi was an employee of the government. This error was either due to a lack of knowledge or an error in strategy, but was not the result of plaintiffs' mistake about the identity of the government or either of these defendants. Rather, this case reflects a mistaken status of a known party, rather than a mistaken identification of a known party.

Unable to satisfy the mistaken identity requirement, the plaintiffs' amended complaint does not relate back and their claims against Dr. Sajadi and Managed Health Care are barred under the two-year statute of limitations. The motion of these defendants for judgment on the pleadings shall thus be granted.

IT IS THEREFORE ORDERED that plaintiffs' motion to estop the government (Dk. 39) is denied; that the government's motion to dismiss claims (Dk. 41) is granted; that Dr. Sajadi and Managed Health Care, Ltd.'s motion for judgment on the pleadings (Dk. 68) is granted; and that

plaintiff's motion for oral argument (Dk. 57) is denied.