**Mack JONES Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. CIV.A. 01–3153–GTV.**

United States District Court,
D. Kansas.

Feb. 13, 2004.

Mack Jones, Florence, CO, pro se.

Christopher Allman, David D Zimmerman, Office of United States Attorney, Kansas City, KS, for Defendant.

### MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff Mack Jones, proceeding *pro se*, brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Plaintiff, formerly a prisoner at the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth"),[1] alleges that he received negligent

---

1. During the pendency of this action, Plaintiff was transferred to the United States Peniten-

medical care following a knee injury that he suffered at USP Leavenworth. Plaintiff originally filed this lawsuit against Dr. Gary D. Boston, the orthopedic surgeon who performed surgery on Plaintiff's knee. In a previous order, this court dismissed Dr. Boston and substituted the United States of America as the sole defendant in this FTCA complaint (Doc. 3).[2] *See* 28 U.S.C. § 2672. The case is now before the court on Defendant's *Motion to Dismiss, Or, Alternatively, Motion For Summary Judgement* (Doc. 7). The United States claims that Dr. Boston is an independent contractor, not a federal employee. As a result, the government argues that the United States should not have been substituted as a defendant, and that this court must dismiss the action for want of subject matter jurisdiction. For the reasons stated below, the court grants Defendant's motion and dismisses the United States from this case. The court further grants Plaintiff forty-five (45) days from the date of this order to show that diversity jurisdiction exists in this case against Dr. Gary D. Boston.

## I. Factual Background

The following facts are taken from the record and are either uncontroverted or viewed in the light most favorable to Plaintiff's case.

### A. Plaintiff's Knee Injury

On May 5, 1998, Plaintiff reported to the Health Services Unit at USP Leavenworth complaining of knee pain. Plaintiff alleges that as he was exiting a building on the premises of USP Leavenworth, he stepped into a pot hole and heard a loud popping sound coming from his knee. An examination revealed that Plaintiff had sustained a fracture to the lateral tibial plateau of his left knee. Because the necessary medical care was beyond the medical staff's capabilities at USP Leavenworth, Plaintiff was admitted to Saint John Hospital in Leavenworth, Kansas. On May 6, 1998, Dr. Gary D. Boston, an orthopedic surgeon at Saint John Hospital, performed surgery to repair Plaintiff's knee. Prior to the surgery, Dr. Boston consulted with Plaintiff and informed him of the risks involved with the operation. Dr. Boston made "no guarantees whatsoever" regarding the surgery's success, and even explained to Plaintiff that if traumatic arthritis developed in his knee, then total knee replacement surgery might be necessary in the future.

On May 7, 1998, Dr. Boston determined that Plaintiff was in satisfactory condition. Plaintiff was discharged from Saint John Hospital and he returned to USP Leavenworth. Dr. Boston visited Plaintiff at USP Leavenworth on May 12, 1998 and June 9, 1998, and noted that he was making satisfactory progress. On June 23, 1998, Dr. Boston returned to USP Leavenworth and removed Plaintiff's cast and staples. At that time, Dr. Boston recommended that Plaintiff perform a series of range of motion exercises, utilize an Ace wrap for knee support, and refrain from attempting any deep knee bends or toe touches for four weeks. Dr. Boston did not set a specific date for a follow up appointment.

From July 23, 1998, until October 22, 1999, Plaintiff visited the Health Services Unit on six occasions complaining of knee pain. Medical record entries in March and

---

tiary in Florence, Colorado.

**2.** Plaintiff has another action pending before this court against the United States, *Mack Jones v. United States,* Case No. 01–3094–GTV. In that case, Plaintiff seeks damages from the United States as a result of the initial injury to his knee, alleged negligent care following his knee surgery, and for failure to file an accident report.

October of 1999 indicate a possible diagnosis of osteoarthritis, an erosion of cartilage in the joint that commonly occurs following the type of injury Plaintiff sustained. During this period, the Health Services Unit prescribed pain medications to Plaintiff, provided Plaintiff with a soak pan, issued him a cane, and instructed him to perform mild knee exercises.

On May 8, 2000, the Bureau of Prisons North Central Regional Office received a Form 95, Claim for Damage, Injury, or Death, from Plaintiff. Plaintiff complained that the surgery Dr. Boston performed left his knee "crooked and disabled" and that Dr. Boston had not provided "consistent follow up" after the surgery. The Bureau of Prisons denied Plaintiff's claim on October 18, 2000. On April 19, 2001, Plaintiff filed this lawsuit against Dr. Boston, claiming Dr. Boston acted negligently because: (1) "he failed to follow up on the developments of [Plaintiff's] rehabilitative progress to ascertain if further surgery was necessary"; and (2) he "did not order . . . physical therapy to assure that [Plaintiff's] knee would perform up to [its] optimal level after surgery." As a result of Dr. Boston's allegedly negligent care, Plaintiff seeks $500,000 in damages.

### B. Contract Between USP Leavenworth and Medical Development International

On May 5, 1997, USP Leavenworth entered into a five year contract with Medical Development International ("MDI") with the stated purpose "to acquire the necessary health care services of a qualified medical entity or entities . . . to supplement those services not provided by USP Leavenworth, Kansas." The background section of the contract states that the Federal Bureau of Prisons staffs its institutions with health care teams to provide comprehensive medical services to federal offenders, but "[w]hen specific health care services are not available within the institution, outside contracting agreements are established with local health care providers to supplement the institution's health services needs."

The contract further states that the contractor, MDI, is to provide inpatient and outpatient hospital and physician services to USP Leavenworth. MDI is specifically responsible for: (1) furnishing all necessary professional health services staff, including subcontractors; (2) providing an established medical facility within a fifty mile radius of USP Leavenworth; (3) ensuring access to sub-speciality medical services, including orthopedic care; (4) adhering to all Federal and State Laws, as well as all policies and procedures relating to safety, custody, and conduct of inmates; (5) ensuring that its health care providers forward all claims for medical services rendered to inmates; and (6) pricing and adjudicating medical claims according to established contract rates. Finally, the Government reserved "the right to inspect and evaluate all services provided during the performance" of the contract. This included the ability to "conduct surveillance of any tasks at anytime during the performance of [the] contract."

## II. Standard of Review

Defendant moves for dismissal under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Motions for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Holt v. United States,* 46 F.3d 1000, 1002–03 (10th Cir.1995) (citation omitted). A court reviewing a facial challenge must accept the plaintiff's factual allegations regarding

jurisdiction as true. *Id.* at 1002 (citation omitted). In contrast, a court reviewing a factual attack may not presume that the plaintiff's allegations are true. *Id.* at 1003 (citation omitted). Rather, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* (citations omitted). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.* (citation omitted).

A court, however, is required to convert a 12(b)(1) motion into "a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.* (citations omitted). "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.*

Here, Defendant brings a factual challenge to the court's subject matter jurisdiction because it points to the existence of a contract between the government and MDI in support of its claim that Dr. Boston is an independent contractor for purposes of the FTCA. Moreover, the FTCA provides both the basis for subject matter jurisdiction and the substantive claim in the case. Accordingly, the court will decide Defendant's motion under the summary judgment standard of review.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

### III. Discussion

Defendant's motion argues that Plaintiff's complaint should be dismissed because: (1) this court lacks subject matter jurisdiction under the contractor exception to the FTCA; (2) Plaintiff did not timely file his administrative claim.

### A. Independent Contractor Exception

█ "The Federal Tort Claims Act is a limited waiver of sovereign immunity,

making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *see* 28 U.S.C. § 1346(b). Employees of the Government, by statute, include "officers or employees of any federal agency," but the term "federal agency" excludes "any contractor with the United States." 28 U.S.C. § 2671. Thus, "[t]he FTCA does not authorize suits based on the acts of independent contractors or their employees." *Curry v. United States*, 97 F.3d 412, 414 (10th Cir.1996) (citing *Orleans*, 425 U.S. at 814, 96 S.Ct. 1971; *Logue v. United States*, 412 U.S. 521, 527, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973)).

▇ The court must determine whether Dr. Boston is a federal employee or an independent contractor. It is well settled that this issue is to be determined by federal law. *Lurch v. United States*, 719 F.2d 333, 337 (10th Cir.1983) (citations omitted). "The power of the federal government 'to control the detailed physical performance of the contractor' is the critical factor in determining whether the independent contractor exception applies." *McDaniel v. United States*, 53 Fed.Appx. 8, 11 (10th Cir.2002) (quoting *Logue*, 412 U.S. at 528, 93 S.Ct. 2215). "The key inquiry under this control test is whether the Government supervises the day-to-day operations of the individual." *Lurch*, 719 F.2d at 337 (citing *Orleans*, 425 U.S. at 815, 96 S.Ct. 1971). In answering this question, the Tenth Circuit has adopted seven factors:

"(1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses her own equipment or that of the United States;

(4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others." *Curry*, 97 F.3d at 414 (quoting *Lilly v. Fieldstone*, 876 F.2d 857, 859 (10th Cir. 1989)).

Two previous Tenth Circuit decisions, *Lurch v. United States* and *Lilly v. Fieldstone*, discuss the application of the control test to contract physicians and provide this court with important guidance to the issue at hand.

In *Lurch*, the Tenth Circuit applied the control test to "a surgeon employed by the New Mexico School of Medicine but with a contract for service for a Veteran's Administration Hospital." *Bird v. United States*, 949 F.2d 1079, 1084 (10th Cir.1991). In that opinion, Judge Holloway noted that "[b]ecause a physician must exercise his own professional judgment, no one controls the detailed physical performance of his duties. Given this, by strictly following the traditional control test it is doubtful whether a physician could ever be found to be a federal employee under the FTCA." *Lurch*, 719 F.2d at 337. Judge Holloway, however, did not reach the question of whether a modified test should apply to physicians. *Id.* Judge Holloway determined that the physician in *Lurch* was not in "a traditional employer-employee relationship." *Id.* at 338. The *Lurch* court focused on the contractual arrangement that existed between the New Mexico School of Medicine and the Veteran's Administration Hospital, and concluded that "[t]he supervision and general control of the physicians resided with the University . . . ." *Id.*

In *Lilly*, a patient at Irwin Army Hospital required emergency urological surgery. 876 F.2d at 858. The hospital summoned

an on-call surgeon to perform the operation because the staff urologist was absent. *Id.* The patient later sued the on-call surgeon for medical malpractice, and the court had to determine whether the doctor was a federal employee or an independent contractor. Once again, the Tenth Circuit faced the issue of whether a different control test should apply to physicians. The court stated:

> It is uncontroverted that a physician must have discretion to care for a patient and may not surrender control over certain medical details. Therefore, the "control" test is subject to a doctor's medical and ethical obligations. Whether we label the test "control" or "modified control" is not determinative. *What we must do in the case of professionals is determine whether other evidence manifests an intent to make the professional an employee subject to other forms of control which are permissible.* A myriad of doctors become employees by agreement without surrendering their professional responsibilities. The United States is equally capable of making such an arrangement by express, unambiguous agreement.

*Id.* at 859 (emphasis added); *see also Robb v. United States,* 80 F.3d 884, 890 (4th Cir.1996) (declining to adopt a modified test to determine the status of private physicians in FTCA cases). The court in *Lilly* determined that the surgeon: (1) billed the Army at his standard rates; (2) maintained a private off-base office; (3) did not have a written contract with the government; and (4) retained control over the same decisions he would have enjoyed in a private hospital. *Id.* at 860. Weighing these factors, the court concluded that

the on-call surgeon was an independent contractor. *Id.*

■ In light of the decisions in *Lurch* and *Lilly,* and the facts present in this case, the court determines that no genuine issue of material fact exists regarding Dr. Boston's status as an independent contractor for purposes of the FTCA.[3]

First, the terms and conditions contained in the contractual agreement between the government and MDI supports Defendant's claim that Dr. Boston should be considered an independent contractor. The "Background" and "Purpose" sections of the contract indicate that the government desired to establish an "outside contracting agreement[ ]" to supplement the medical services not provided by the medical staff at USP Leavenworth. In the contract, MDI is referred to as the "Contractor," responsible for "employ[ing] professional staff, including any subcontractors . . . ." The contract does include a "Government Quality Assurance" provision, granting the government "the right to inspect and evaluate all services provided during the performance under [the] contract." The court, however, does not construe this provision as providing the government the right "to control the detailed physical performance of the contractor." Instead, the court is persuaded by the Fourth Circuit's decision in *Robb v. United States,* 80 F.3d 884 (4th Cir.1996). In *Robb,* the Fourth Circuit ruled that a similar contractual provision amounted "to nothing more than a standard quality assurance clause by which the government reserves the right to determine whether it is satisfied with the services it is purchasing under the contract." *Id.* at 892. Viewing the contractual agreement as a whole, the court concludes that the parties

---

3. Based on this decision, it is unnecessary to consider Defendant's argument that Plaintiff failed to timely file his administrative claim.

did not intend to form a "traditional employer-employee relationship."

Second, the nature of Dr. Boston's relationship with the government indicates that Dr. Boston should be viewed as an independent contractor. The government did not control the day-to-day operations of Dr. Boston, nor did the government control Dr. Boston's medical judgment as it related to the details of Plaintiff's surgery. Following the guidance of *Lilly,* the court determines that "other evidence" also supports the court's view that Dr. Boston was not a government employee. The facts of this case show that: (1) Dr. Boston performed surgery on Plaintiff at Saint Joseph Hospital; (2) Dr. Boston used medical equipment furnished by, and available at, Saint Joseph Hospital; and (3) Dr. Boston did not maintain an office at USP Leavenworth. Arguably, the government controlled Dr. Boston's activities during his visits to USP Leavenworth to check on Plaintiff's progress and to remove Plaintiff's cast, but the court determines that the primary activity contracted for was Plaintiff's surgery at Saint Joseph Hospital.

The court concludes that no genuine issue of material fact exists as to Dr. Boston's status as an independent contractor. The court notes that this decision is consistent with other circuits that have held that "physicians either in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, and not employees of the government for FTCA purposes." *Robb,* 80 F.3d at 890 (citing *Carrillo v. United States,* 5 F.3d 1302 (9th Cir.1993); *Broussard v. United States,* 989 F.2d 171 (5th Cir.1993); *Leone v. United States,* 910 F.2d 46 (2d Cir.1990); *Lilly,* 876 F.2d 857; *Lurch,* 719 F.2d 333; *Bernie v. United States,* 712 F.2d 1271 (8th Cir.1983)). Because the United States cannot be held liable for the acts of independent contractors, the court orders that the United States be dismissed as a defendant in this action. *See Lurch,* 719 F.2d at 333. The court acknowledges that its previous order (Doc. 3) substituting the United States as a defendant in this action for the original named defendant, Dr. Gary Boston, was in error.

### B. Jurisdiction over Plaintiff's Medical Malpractice Claim

Having dismissed the United States from this action, the court must now consider whether federal jurisdiction exists over Plaintiff's claim for medical malpractice caused by Dr. Boston's alleged negligence.

 As the party seeking to invoke federal jurisdiction, Plaintiff bears the burden of proving that jurisdiction is proper. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974) (citations omitted). Because federal courts are courts of limited jurisdiction, the presumption is against federal jurisdiction. *Id.* (citation omitted). A federal court lacking subject matter jurisdiction "must dismiss the case at any stage of the proceeding in which it becomes apparent that such jurisdiction is absent." *Id.*

The form complaint that Plaintiff filed has boxes that are to be marked to indicate what type of action Plaintiff is filing. On his form complaint, Plaintiff checked the box labeled "Civil Complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346, 2671–2680." Plaintiff named Dr. Gary D. Boston as the defendant, but checked "No" on the part of the form asking him to state whether the defendant was employed by the local, state or federal government. Construing Plaintiff's pleadings liberally, as the court must, it appears Plaintiff is maintaining a state law medical

malpractice claim against Dr. Boston based on the allegedly negligent care Plaintiff received after his knee surgery. Thus, this court lacks subject matter jurisdiction unless diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

■ Section 1332(a) provides that district courts shall have original jurisdiction over any civil action where the matter in controversy exceeds the sum or value of $75,000 and the dispute is between citizens of different states. "This statute and its predecessors have consistently been held to require complete diversity of citizenship." *Owen Equip., and Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). "That is, diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Id.*

■ For purposes of determining whether diversity jurisdiction exists, a person is a "citizen" of the state in which he or she is "domiciled." *Crowley v. Glaze,* 710 F.2d 676, 678 (10th Cir.1983). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (citation omitted). Moreover, "courts presume that the domicile of a prisoner at the time of his incarceration remains his domicile during any term of incarceration." *Tennis v. Upland Mut. Ins. Inc.,* No. 96–2253–EEO, 1997 WL 450049, at *2 (D.Kan. July 7, 1997) (citations omitted). "[T]his presumption is rebuttable if the prisoner establishes that he intends to be domiciled in the state where he is incarcerated, i.e., that he intends to stay in that state indefinitely." *Id.* (citations omitted). Finally, diversity of citizenship is ascertained at the time the complaint is filed. *Stucky v. Bates,* 2 F.Supp.2d 1434, 1437 (D.Kan.1998) (citation omitted).

■ Accordingly, the court grants Plaintiff forty-five (45) days from the date of this order to show that diversity jurisdiction exists against Dr. Gary D. Boston. Plaintiff should provide the court with objective facts, and not merely unsubstantiated declarations, demonstrating his state residence and his intention to remain there indefinitely. *Tennis,* 1997 WL 450049, at *1–2. Plaintiff should also allege the domicile of Dr. Gary D. Boston. If the court determines that Plaintiff has provided sufficient declarations to support diversity jurisdiction, the court will restore Dr. Gary D. Boston as defendant in this case. The court notes that this course of action would not preclude Dr. Gary D. Boston from later contesting this court's subject matter jurisdiction.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's *Motion to Dismiss, Or, Alternatively, Motion For Summary Judgement* (Doc. 7) is granted. Defendant United States of America is dismissed from this action.

IT IS FURTHER ORDERED that Plaintiff is granted forty-five (45) days from the date of this order to provide evidence that diversity jurisdiction exists against Dr. Gary D. Boston.

Copies of this order shall be transmitted to *pro se* Plaintiff and to counsel of record.

**IT IS SO ORDERED.**